MARTIN E. CONNAUGHTON *et al.*, Plaintiffs-Appellants, *v.* ELMER GERTZ *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-1388

Opinion filed March 12, 1981.

James J. Reidy, Ltd., of Chicago (Anthony C. Sabbia, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, Dennis J. Horan, and George W. Spellmire, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, a group of tugboat captains, retained defendants, two attorneys, to pursue a tort action in Illinois courts on plaintiffs' behalf. That action was dismissed because defendants failed, through alleged lack of diligence, to bring about timely service of process on the party being sued. Plaintiffs then brought this legal malpractice action against defendants in the circuit court of Cook County. Defendants moved to dismiss under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). The trial court granted this motion, holding that, as a matter of law, plaintiffs could not have won the previous tort action and thus plaintiffs were unable to show that defendants' negligence caused any injury. From this order of dismissal, plaintiffs appeal.

We affirm.

For several years prior to April 1, 1966, plaintiffs were employed by Great Lakes Towing Company (employer) as tugboat captains. Plaintiffs were also members of the Licensed Tugmen's and Pilots' Protective Association (union). The union had long represented plaintiffs, and other captains, and a group of tugboat engineers in their contract negotiations with the employer.

On April 1, 1966, plaintiffs resigned from membership in the union. Shortly thereafter, the union informed the employer that its remaining members (the engineers and other captains who had not resigned their union membership) would refuse to work for the employer if it continued to retain plaintiffs as employees. The union told the employer that it was justified in making this threat for two reasons. First, the members of the union had taken an oath that they would not work for an employer who retained nonunion members in union secured jobs. Second, the collective bargaining agreement that the union had negotiated with the employer on behalf of its members contained a union security clause that required the employer to employ as captains and engineers only those persons who were supplied by the union, provided that, if the union was unable to supply needed employees, the employer could hire nonunion persons as long as those persons agreed to become members of the union within 15 days after they were hired. The union alleged that, if the employer continued to retain plaintiffs as captains, the employer would be in violation of the foregoing clause of the collective bargaining agreement. As a result of the union's threat, the employer discharged plaintiffs.

Immediately following their discharge, on April 13, 1966, plaintiffs filed a charge with the National Labor Relations Board (NLRB) asserting that the employer and the union had engaged in unfair labor practices in bringing about their discharge. Thereafter, the general counsel for the NLRB filed a formal complaint against the union and the employer charging them with unfair labor practices.

The controversy before the NLRB concerned whether the union security clause in the collective bargaining agreement was valid. If it was invalid then an attempt to enforce that clause would have been an unfair labor practice. Under the National Labor Relations Act (the Act), statutory "employees" have certain rights including the right to refrain from being a member of a labor union. (See 29 U.S.C. §157 (1976).) However, this right is conditioned in that an employer and a union may enter into agreements containing enforceable union security clauses. Nevertheless, it is an unfair labor practice in violation of an employee's rights if that union security clause requires, as a condition of employment, that a nonunion employee become a member of the union before the 30th day following the beginning of his employment. 29 U.S.C. §158(a)(3) (1976).

In a normal situation, the union security clause in question before the NLRB would have been clearly invalid under the Act because it required nonunion employees to become members of the union within 15 days after becoming employed by the employer. However, the union security clause would have been invalid only if it affected statutory employees because employees are the only ones who have any rights under the Act. It was stipulated in the proceedings before the NLRB that plaintiffs were not "employees" under the Act but were "supervisors" (29 U.S.C. §152(11) (1976)), since they were captains. Supervisors have no rights under the Act. Nevertheless, unfair labor practices may still be committed if action taken against supervisors would tend to have an adverse effect on the rights of employees. The sole question before the NLRB was whether the union security clause was invalid as to the plaintiffs-supervisors because enforcement of the clause against the plaintiffs would tend to adversely affect the rights of the engineers, who were members of the union and who were statutory employees. The NLRB held that the union security clause was invalid as to the engineers, but it also held it was not invalid as to the plaintiffs-supervisors because enforcement of the clause against the plaintiffs would have no adverse effect on the engineers' rights. Accordingly, the NLRB concluded that no unfair labor practice had been committed in relation to plaintiffs and plaintiffs were denied relief.

While the proceedings before the NLRB were in progress, plaintiffs retained defendants to pursue a State action against the union for interference with their contractual relationship with their employer. On behalf of plaintiffs, defendants filed such an action in the circuit court of Cook County. In this action, defendants failed to bring about service of process on the union. In 1974, long after the proceedings before the NLRB had ended, plaintiffs' State action was dismissed pursuant to Supreme Court Rule 103(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 103(b)) because plaintiffs had failed to exercise due diligence to obtain service. The dismissal of this action was affirmed on appeal. *Connaughton v. Burke* (1977), 46 Ill. App. 3d 602, 361 N.E.2d 87.

Thereafter, plaintiffs brought the present legal malpractice action, claiming that defendants' failure to obtain service in the prior action was a negligent act which caused plaintiffs to lose a valid cause of action. Defendants filed a motion to dismiss under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). In this motion, defendants admitted *arguendo* that their failure to obtain service on the union was a negligent act. Nevertheless, defendants asserted, correctly, that plaintiffs could not recover any damages from defendants unless plaintiffs could prove that their original action against the union would have been successful. See *Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.

Defendants asserted that, as a matter of law, the plaintiffs would have been unsuccessful in their action against the union for three alternative reasons. First, any State action the plaintiffs had was preempted by Federal law and plaintiffs' only course of action was to pursue the proceedings before the NLRB. Second, even if there was not preemption, plaintiffs' claim in State court against the union would have been barred by the doctrine of res judicata because the NLRB had held that the union's threat to stop working for the employer and the employer's discharge of plaintiffs were valid acts under Federal law and thus plaintiffs could not be awarded damages in the State court action because the union had not engaged in any wrongful conduct. Third, plaintiffs' action would have been unsuccessful under Illinois law because the union's actions were privileged since the alleged interference with plaintiffs' contractual rights resulted primarily from the union's attempt to enforce its members' own contractual rights with the employer. Defendants supported their motion by affidavit and by presenting all of the documents presented before the NLRB and the official findings of the NLRB, which together established the facts as we have set them out in this opinion. None of these facts are disputed by plaintiffs.

The trial court granted defendants' motion for all three reasons alleged by defendants, and this appeal followed.

OPINION

In disposing of this case we find it necessary to address only the third reason for dismissal argued below. We believe plaintiffs' action against the union would have been unsuccessful under Illinois law because the union was privileged to interfere with plaintiffs' contractual relationship in the manner that the union did. Since plaintiffs could not have succeeded in their action against the union, they could not maintain a negligence action against defendants because defendants' negligent act caused no injury to plaintiffs.

■■ To maintain an action for interference with a contractual relationship, a plaintiff must plead and prove: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) the defendant's awareness of this relationship; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.

■■■ The key to plaintiffs' success or failure in their action against the union depended on whether plaintiffs could prove that the union's interference with their contractual relationship was unjustified. Though contractual relationships are protected from third-party interference, in many cases the third party may be privileged to purposely bring about

the breach of plaintiff's contract with another. (See *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 244 N.E.2d 809; *Supreme Savings & Loan Association v. Lewis* (1970), 130 Ill. App. 2d 16, 264 N.E.2d 857.) The question of whether such a privilege can be established depends on two factors. First, a third party may purposely bring about a breach of plaintiff's contract with another when he is acting to protect a conflicting interest that is considered under the law to be of a value equal to or greater than plaintiff's contractual rights. (See *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98; Restatement of Torts §767 (1939).) Second, the third party's acts that bring about the breach must be legal acts and must not be unreasonable in the circumstances. See Restatement of Torts §767 (1939); W. Prosser, Law of Torts §129 (4th ed. 1971).

■■ In the present case, the union had entered into a contract on behalf of its members with the employer. Under this contract, the employer promised to employ only union members as captains. The NLRB declared that this union security clause in the contract was not prohibited by Federal law as far as it related to the captains. Nothing in our law prohibits an employer in the private sector and a union from entering into a contract containing such a union security clause. Thus, the contract term is a legally permissible term, and the parties on appeal do not dispute this.

Additionally, from the undisputed facts in the record, we find that the union coerced the employer to discharge plaintiffs in order to protect its members' own valid contractual rights with the employer. The union's contract with the employer required the employer to employ only union members as captains. This contractual interest was in direct conflict with plaintiffs' interest in continuing to be employed by their employer. In most cases, conflicting contractual rights stand on an equal plane. Generally, when A has a valid contract with C, and C enters into a contract with B, and the enforcement of A's contract depends on the nonenforcement of B's contract, A is privileged to use any reasonable means to bring about a breach of B's contract with C to protect his own interest. (See *Millers Mutual Casualty Co. v. Insurance Exchange Building Corp.* (1920), 218 Ill. App. 12; Restatement of Torts §773 (1939).) Here, the union was privileged to use any reasonable means to bring about a breach of plaintiffs' contract because it was attempting to enforce its members' conflicting contractual rights.

■■ ■ Finally, the union, by threatening to keep its members from working for the employer unless the employer discharged plaintiffs, was threatening to do a legal act which was not unreasonable in the circumstances. No one can doubt today that a private labor union, on behalf of its members, can, unless prohibited by its own contract with the employer from doing so, threaten to have its members cease working for an employer in order to carry out the legitimate objectives of its members. In

*Kemp v. Division No. 241, Amalgamated Association of Street and Electric Ry. Employees of America* (1912), 255 Ill. 213, 99 N.E. 389, a plurality of the members of the supreme court held that a union acted both legally and reasonably when it threatened to have its members cease working for the employer if the employer continued to employ persons who had resigned from the union. In that case, the union was not even attempting to enforce a valid contractual right of its own members equal in value to the plaintiffs' employment rights, but was merely attempting to protect its members' interest in working for whom and with whom they chose to work. Here, the union was attempting to protect an even more directly affected interest than in *Kemp*—its members' own contractual rights, which were of equal value to plaintiffs' contractual rights.

Hence, in this case, no other conclusion can be reached, based on the undisputed facts in the record, but that plaintiffs would have been unable to show that the union's interference with their contractual relationship was unjustified. As a result of this, plaintiffs could not maintain a negligence action against defendants because defendants' acts did not cause an injury.

Accordingly, for the reasons noted, we affirm the dismissal of plaintiffs' complaint.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.