541 F.Supp. 1080 (1982)
INTERNATIONAL ADMINISTRATORS, INC., Plaintiff,
v.
LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.
No. 82 C 625.
United States District Court, N. D. Illinois, E. D.
May 11, 1982.
*1081 John R. Ruddy, Becker & Ruddy, Chicago, Ill., for plaintiff.
William J. Holloway, Joseph R. Rominski, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER
SHADUR, District Judge.
International Administrators, Inc. ("IAI") and its president, Sheldon Harrison ("Harrison") sue Life Insurance Company of North America ("LINA") in 12 counts claiming interference with IAI's contractual relationships, interference with prospective advantage, breach of contract and defamation. LINA has moved to dismiss the Complaint for failure to state a cause of action. For the reasons contained in this memorandum opinion and order, LINA's motion is granted as to Count VIII and Counts X-XII and is denied as to all other Counts.[1]

Counts I to V
Complaint Counts I-V assert claims of interference with IAI's contractual relations with the Iowa Department of the American Legion (the "Iowa Legion"). Beginning in 1971 IAI was broker and administrator for various group insurance programs of the Iowa Legion and its Ladies' Auxiliary. In that capacity it placed a substantial part of that coverage with LINA beginning in 1976.
Then the Complaint alleges that in March 1981 (Ct. I, ¶ 12; Ct. II, ¶ 6; Ct. III, ¶ 4; Ct. IV, ¶ 4; Ct. V, ¶ 3 state slightly different variants):
LINA communicated with [the Iowa Legion] and intentionally acted in a way calculated to cause damage to [IAI] by use of intimidation, force, coercion and misrepresentation and threats to [the Iowa Legion] with the malicious intent of preventing [IAI] from fulfilling its contract with [the Iowa Legion] and with the intent to induce [the Iowa Legion] not to continue a valuable business relationship with [IAI].
Two letters (Ex. D and E) from LINA to the Iowa Legion are attached to the Complaint as evidence of LINA's illegal interference. Those identical letters, written to two Iowa Legion officials, state that:
(1) LINA "ha[s] not received certain premiums on policies ... that were due as far back as September, 1980," although the premiums had been "collected by your broker, Mr. Sheldon Harrison ... but have not been remitted to" LINA.

*1082 (2) Because Harrison was the Iowa Legion's "appointed broker, we are in a position that forces us to terminate our relationship with your organization as long as he is your representative."
(3) LINA meant the letters as "an intent to cancel" the hospital indemnity coverage as of May 1, 1981.
As a direct result of such actions by LINA, the Complaint concludes, the Iowa Legion cancelled its broker contract with IAI. This action followed.[2]
In this diversity action, Illinois law provides the substantive rule of decision. LINA invokes Connaughton v. Gertz, 94 Ill.App.3d 265, 269, 49 Ill.Dec. 838, 841, 418 N.E.2d 858, 861 (1st Dist. 1981) to claim its interference with IAI's contract was "privileged." Because a defendant's intentional and unjustified inducement must be part of plaintiff's prima facie case (id. at 269, 49 Ill.Dec. at 841, 418 N.E.2d at 861) LINA seeks dismissal of Counts I to V.
Connaughton teaches the existence of a "privilege to interfere" rests on two factors (id. at 270, 49 Ill.Dec. at 841, 418 N.E.2d at 861):
(1) Defendant must have brought about the breach of plaintiff's contract by acting to protect a conflicting interest considered under the law to be of a value equal to or greater than plaintiff's rights.
(2) Defendant's acts in inducing the breach must have been legal and not unreasonable under the circumstances.
In applying those principles it states (id. at 270, 49 Ill.Dec. at 842, 418 N.E.2d at 862):
In most cases, conflicting contractual rights stand on an equal plane. Generally, when A has a valid contract with C, and C enters into a contract with B, and the enforcement of A's contract depends on the non-enforcement of B's contract, A is privileged to use any reasonable means to bring about a breach of B's contract with C to protect his own interest.
Connaughton does not compel dismissal for at least two reasons. First, the Complaint does not make unavoidable the conclusion that enforcement of LINA's contract "depended on" the breach of IAI's brokerage agreement with the Iowa Legion. Second, the Complaint alleges LINA acted "by use of intimidation, force, coercion, and misrepresentation and threats" in its inducement to the Iowa Legion. Under the second branch of the Connaughton test such wrongful conduct by LINA, if proved by IAI, would negate LINA's claim of "privilege" even if otherwise appropriate.
Even though Exhibits D and E, standing alone, cannot establish IAI's claim, no federal litigant is required to plead all its evidence. Fed.R.Civ.P. 8(a) instructs exactly the opposite.[3] On LINA's motion to dismiss, this Court is bound to take IAI's averments of "intimidation, force, coercion, misrepresentation and threats" as true and made in good faith. LINA's motion must fail as to Counts I to V.

Counts VI and VII
Counts VI and VII withstand LINA's motion on similar grounds. They assert a claim for interference with a prospective advantage because when LINA caused the Iowa Legion to terminate its contract with IAI, two new insurance plans IAI was to broker and administer for the Iowa Legion had been about to come to fruition. Those allegations establish a "reasonable expectancy."
LINA claims "what is pleaded falls far short" of stating a prima facie case, but it *1083 fails to say how. IAI meets the test spelled out recently in Belden Corp. v. InterNorth, Inc., 90 Ill.App.3d 547, 551-52, 45 Ill.Dec. 765, 768-69, 413 N.E.2d 98, 101-02 (1st Dist. 1980). Belden found no interference with a prospective advantage where plaintiff was deprived of the advantage solely through defendant's pursuit of its own advantage. In so doing the court said, id. at 553, 45 Ill.Dec. at 770, 413 N.E.2d at 103:
... Belden cannot meet the requirements for interference with prospective advantage unless it makes a showing of unfair competition on the part of InterNorth [citing authority]. Unfair competition, which is not privileged, includes fraud, intimidation, or disparagement.
Here IAI asserts the equivalent of such non-privileged unfair competition.[4] Each of Counts VI and VII alleges:
Defendant approached officers, employees and/or agents of Iowa and alleged that Plaintiff was delinquent with premium remittances and contrary to law threatened and intimidated Iowa by implying that coverage might not be in force. Said threats were made for the purpose of destroying the business relationship between Plaintiff and the Iowa Department and such threats were known by LINA to be false and contrary to law and as a result Iowa withdrew sponsorship of this plan.
Each Count also incorporates by reference Count I's allegations of wrongful conduct.

Count VIII
Count VIII purports to charge another inducement of contract breach by LINA, this time as to IAI's broker-administrator relationship with the Illinois American Legion. It must however fail, for the Complaint reflects the Illinois Legion did not terminate its relationship with IAI, despite LINA's inducement. Accordingly LINA's motion to dismiss Count VIII is granted.[5]

Count IX
Count IX is a contract action based on LINA's offer to pay IAI, as an inducement to place cancer and vehicular insurance plans with LINA, a "contingent commission" over and above that paid by the Iowa Legion. It must survive.
LINA first argues Count IX does not allege an "acceptance" of the offer, so there is no contract on which to base a claim. But an offer for a unilateral contractlike this onemay be "accepted" by rendering performance. Placement of the insurance with LINA constituted such performance.
LINA also advances the Statute of Frauds as a bar to IAI's claim. At least on the face of the Complaint it does not appear that the agreement could not be performed within a year in all eventsthe relevant legal test. At least at this stage, then, the Statute of Frauds defense is not dispositive.

Counts X to XII
Counts X to XII properly state a cause of action against LINA for defamation of both IAI and Harrison. Under Whitby v. Associates Discount Corp., 59 Ill. App.2d 337, 207 N.E.2d 482 (3d Dist. 1965), an action for libel (written defamation) will lie if the defendant's words:
(1) "imput[e] inability to perform or want of integrity in the discharge of duties of office or employment"; or
(2) "prejudic[e] a particular party in his profession or trade."
Plaintiffs have satisfied the Whitby standard.
True enough, many of the LINA letters attached as Complaint Exhibits do no more than inform the addressee that LINA "no longer recognizes [IAI] as an authorized *1084 agent" and that LINA will discontinue insurance then in force unless the addressee chooses another "broker/agent/administrator." Such statements are not themselves defamatory. Under the Illinois rule of innocent construction, no criticism of IAI or Harrison's professional abilities need be inferred from LINA's letter of notice.
But Exhibits D and E stand on different ground entirely. Those letters state to the Iowa Legion's officials:
We regret to inform you that we have not received certain premiums on policies issues to the Iowa American Legion that were due as far back as September, 1980. These premiums were collected by your broker, Mr. Sheldon Harrison of G & H Insurance Administrators, Inc. [another company that Harrison headed], but have not been remitted to [LINA].
That statement (if false, of course) prima facie exposes LINA to a defamation claim. It may fairly be read as charging Harrison and IAI with at least a gross deviation from the fiduciary obligation they owed the Iowa Legion.[6] Certainly such charges impute to Harrison and IAI a "want of integrity in the discharge of duties of office or employment" in the language of Whitby. For the same reason the LINA statements could well "prejudice a ... party in his profession or trade." LINA's motion is therefore denied as to Counts X to XII as well.

Punitive Damages
LINA has moved to strike the Complaint's claims for punitive damages. While this action may not ultimately turn out to present the aggravating circumstances needed to award punitive damages, such a conclusionas a matter of lawwould be improper. IAI's Complaint portrays LINA as interfering with IAI's enforceable contracts and advantageous relationships out of nothing more than pure ill-will (and inferentially a desire to place control of the Iowa Legion's accounts in the hands of a broker/agent/administrator favorable to LINA). IAI claims its shift of insurance business to other underwriters was in the best interests of its principals, the Iowa and Illinois Legions.
If that sketch turns out at trial to be a true portrait, a jury could legally award punitive damages against LINA. Thus its motion to strike the claims for punitive damages is denied.

Conclusion
LINA's motion to dismiss is granted only as to Count VIII. Its motion is denied as to Counts I through VII and IX through XII. LINA's motion to strike punitive damage claims is also denied.[7] LINA is ordered to answer the Complaint on or before May 21, 1982, and the case is set for status hearing July 8, 1982 at 9:15 a.m.
NOTES
[1] This opinion and its analysis owe virtually nothing to the submission by the parties, whose discursive memoranda do not perform the function expected of litigants addressing legal issues. With the resource in shortest supply in the litigation system being the judge's time, and the second shortest being that of the judge's law clerks, it is frankly an imposition to thrust on the latter (in this case James Kaplan, Esq.) the burden of doing the parties' research and analytical work for them, so that the Court must review and revise the law clerk's work product (and not that of the litigants) to produce a reasoned response.
[2] Not every Count refers to the events that allegedly triggered LINA's "malicious intent." However Ct. II, ¶ 5 refers to the fact that in 1980 IAI was "forced" to seek another insurance company as underwriter for part of the coverage (the cancer insurance plan) because of "threats made by [LINA] as to the limitation of coverage, increase of rates and limitation of solicitation privileges." Similarly Ct. III, ¶ 3 refers to a shift of the "wheels" insurance coverage from LINA to another underwriter in 1980 as motivating LINA's action. Ct. IV, ¶ 4 and Ct. V, ¶ 3 refer to like retributive motivation on LINA's part.
[3] This is not to commend the Complaint as a model of pleading. Like plaintiffs' rambling memorandum in opposition to LINA's motion, it poses the task of trying to separate wheat from chaff.
[4] IAI and LINA are not of course direct competitors they do not seek to market the same product or service to the same customers. But IAI's position as broker, and its efforts (assertedly in the Iowa Legion's best interest) to shift coverage from LINA to other underwriters, gives LINA much the same business incentives to undercut IAI as it would a direct competitor.
[5] There may perhaps be some type of claim available to IAI under another theory. For aught that appears in Ct. VIII ¶ 9, however, IAI just had to provide a more competitive underwriter.
[6] Depending on the circumstances of payment by the Iowa Legion (a matter not before the Court), the claimed delinquency might be worseperhaps fraud or even embezzlement.
[7] LINA has also moved to strike the affidavits and exhibits attached to plaintiffs' memorandum. That motion is really moot, for this Court did not consider those matters. Instead it dealt solely with the Complaint and reasonable inferences drawn from it.