MILDRED D. SCHOTT *et al.,* Plaintiffs-Appellants, *v.* REYNALDO P. GLOVER, Indiv. and as Agent for Isham, Lincoln & Beale, Defendants-Appellees.—MILDRED D. SCHOTT *et al.,* Plaintiffs-Appellants, *v.* CHARTERED BANK, a/k/a The Standard Chartered Bank, Defendant-Appellee.

First District (3rd Division)   Nos. 80—3160, 82—142 cons.

Opinion filed September 15, 1982.

Sidney Z. Karasik, of Chicago, for appellants.

Hedlund, Hunter & Lynch, of Chicago (Reuben L. Hedlund, John R. McCambridge, and Kevin A. Russell, of counsel), for appellee Reynaldo P. Glover.

Chapman, & Cutler, of Chicago (Christine Hehmeyer Rosso, of counsel), for appellee Chartered Bank.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Mildred D. Schott, First Women's Realty Corp., and Cedilla Co., brought this action seeking damages from defendants Standard Chartered Bank, Reynaldo P. Glover, and the law firm of Isham, Lincoln & Beale. Plaintiffs alleged in count I of their amended complaint that the bank had breached an exclusive agency agreement with plaintiffs and in count II that attorney Glover, individually and as agent for Isham, had tortiously interfered with that agreement. Count III contained alternative allegations that Glover had tortiously interfered with plaintiffs' business relationship and expectancy. The trial court dismissed counts II and III for failure to state a cause of action. The trial court also struck count I but granted plaintiffs leave to amend that count. Plaintiffs' second amended complaint against the bank was subsequently dismissed for failure to state a cause of action. Plaintiffs' appeals have been consolidated.

We first address plaintiffs' contention that their amended com-

plaint stated a cause of action for breach of contract against the bank. The complaint averred that the bank had entered into three written exclusive agency agreements with plaintiffs each of which provided that plaintiffs were to act as the bank's "sole and exclusive real estate broker" for the purpose of securing office space for the bank in the Chicago area. The bank was to pay no fee for plaintiffs' services, but commissions were to be paid by the owner of the building in which the bank leased or purchased space. The initial agreement was between the bank and plaintiff First Women's Realty Corp. of which plaintiff Schott was president and stockholder. It was for a term of six months, commencing January 1, 1977. The second agreement was between the bank and plaintiff Cedilla Company, of which Schott was president and stockholder. That agreement lasted for three months. The third agreement, also between Cedilla Co. and the bank, was for a term of six months, expiring June 30, 1978.

Plaintiffs alleged that after the expiration of the third written agreement the "Exclusive Agency was continued at the oral request of BANK's Vice President and Manager, Timothy P. Nunan *** via various telephone and face-to-face conversations, and evidenced by certain correspondence," copies of which were attached to the pleadings. They asserted that "plaintiffs and defendant's agent understood that said extension of plaintiffs' exclusive agency was to be for an additional six-month period," although this term was "not specifically mentioned in said conversations and correspondence."

Plaintiffs alleged further that, pursuant to this understanding between the parties, they "continued to exert time and effort and rendered valuable services to locate suitable office space for the bank." The bank, allegedly aware that plaintiffs were continuing to perform such services, independently entered into a lease for space in a building in downtown Chicago and notified plaintiffs by letter dated December 12, 1978, that their services were no longer required. Plaintiffs charged that the bank's execution of the lease during the existence of their exclusive agency agreement, as extended, was a breach of that agreement and that it deprived plaintiffs of their brokerage commission. Alternatively, plaintiffs alleged that the December 12 letter in itself constituted a premature termination and breach of agreement.

Plaintiffs asserted that as early as January 1978, they presented the bank with data regarding space at the building in question and discussed that structure with the bank. All parties agree, however, that in order to state a cause of action for breach of contract in the present case, it was necessary for plaintiffs to allege that their exclu-

sive agency agreement with the bank was extended past the June 30, 1978, expiration date and that such extension was for a specific term. Absent exclusivity, plaintiffs would not be entitled to commissions for their unsuccessful efforts. (*Lord v. Melton* (1980), 80 Ill. App. 3d 1057, 400 N.E.2d 547.) Without a specific term, the alleged agency contract would have been terminable at the will of either party thus negating any cause of action for premature termination. *Kraftco Corp. v. Kolbus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.

Any allegations in the body of plaintiffs' second amended complaint which might indicate an extension by the parties of their exclusive agency agreement were clearly contradicted by the exhibits attached to that complaint. In a letter dated August 2, 1978, Nunan thanked Schott for her efforts on the bank's behalf "whilst you were acting as our exclusive agent." Schott, in a letter to Nunan dated October 24, 1978, expressed her own confusion as to how the bank was presently handling its search of a location. She then referred to their working relationship "since January 1977 and up until a few months ago under an exclusive agreement."

■ Contrary to plaintiffs' allegations, these exhibits clearly indicate that both sides were aware that their exclusive agency agreement had not been extended beyond the termination date of June 30, 1978. Facts set forth in exhibits attached to a complaint control over contrary allegations in the complaint itself. (*W.H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325.) Plaintiffs' allegations of an extension by the parties of the exclusive agreement must therefore be disregarded. Since plaintiffs failed to allege sufficiently an extension of their exclusive agency agreement, the trial court properly dismissed the second amended complaint for failure to state a cause of action as to the bank.

We next address plaintiffs' contention that count II of their amended complaint stated a cause of action against Glover, individually as attorney for the bank and as agent for Isham for tortious interference with a contractual relationship. Plaintiffs alleged that Glover, with knowledge that the bank had agreed to extend its exclusive agency agreement with plaintiffs and that plaintiffs were performing services pursuant to that extension, induced the bank to breach and terminate prematurely that exclusive agency. Specifically, plaintiffs charged that Glover minimized the value of plaintiffs' services; erroneously informed the bank that its contractual obligations to plaintiffs had ceased on June 30, 1978, and advised it not to continue the agency relationship; and misled the bank by informing it that a continuation would result in office rentals inflated by the amount of

plaintiffs' commission. Plaintiffs alleged further that Glover negotiated directly with a realty firm on behalf of the bank with regard to the property in question and advised the realty firm that it was unnecessary to negotiate with plaintiffs.

■ To maintain an action for tortious interference with a contractual relationship, a plaintiff must plead and prove: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. (*Connaughton v. Gertz* (1981), 94 Ill. App. 3d 265, 418 N.E.2d 858.) Plaintiffs in the present case failed to allege effectively the existence of a contractual relationship. They alleged that the exclusive agency had been orally extended. Nevertheless, they attached the same correspondence between Schott and Nunan which clearly negated any inference of an extension. Since plaintiffs failed to plead an essential element of the tort of interference with a contractual relationship the court properly dismissed count II.

■ Count II was also deficient in that it failed to plead effectively that Glover's acts were unjustified. The purpose of imposing liability on persons who interfere with the contractual relationships of others is to protect one's interest in such relationships against forms of interference which, on balance, the law finds repugnant. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921.) The question of justification therefore rests on whether protection of the contractual interest merits prohibition of the particular conduct which interferes with that interest. (*Swager v. Couri.*) Under certain circumstances a third party may be privileged purposely to bring about a breach of contract between other parties. This privilege occurs where the third party acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved. *Connaughton v. Gertz.*

■ ■ The fiduciary duty owed by an attorney to his client is such an interest and under the circumstances here alleged Glover was privileged, in his capacity as the bank's attorney, to perform the acts and give the advice alleged in count II. We need not decide whether the advice given was correct in every aspect. Although incorrect advice as to a client's contractual obligations might cause that client to become liable to a third party in contract, it does not follow that the attorney would also be liable to that party. To impose such liability on an attorney would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney's fiduciary duty to

his client. Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect. *D. & C. Textile Corp. v. Rudin* (Sup. Ct. 1964), 41 Misc. 2d 916, 246 N.Y.S.2d 813.

Plaintiffs' reliance on *W.P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615, for the argument that Glover was not conditionally privileged in his action, is surprising and misplaced since that holding was expressly rejected by our supreme court. *Swager v. Couri.*

■ The privilege accorded an attorney when advising his client is not absolute. A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 229 N.E.2d 514.) Such allegations, however, would necessarily include a desire to harm, which is independent of and unrelated to the attorney's desire to protect his client. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association.*) No such allegations are contained in count II. In light of Glover's conditional privilege, plaintiffs failed to allege sufficiently unjustified conduct, and the trial court properly dismissed count II for failure to state a cause of action.

We finally address plaintiffs' contention that count III of their amended complaint stated a cause of action for tortious interference with a business expectancy. Count III recites that, even absent an extension of the exclusive agency agreement, plaintiffs' continued efforts on the bank's behalf, with the bank's knowledge and consent, amounted to a valid business relationship and expectancy under which plaintiffs would have realized substantial brokerage commissions from the owner of any building in which the bank leased or purchased space. Plaintiffs charged further that Glover, aware of plaintiffs' valid business relationship with the bank, induced the bank to repudiate and terminate that relationship thus depriving plaintiffs of their commissions. The specific conduct by Glover which allegedly caused this termination was the same as that alleged in count II.

■ In order to state a cause of action for tortious interference with a valid business relationship and expectancy a plaintiff must effectively plead a reasonable expectancy of entering a valid business relationship and purposeful interference by defendant which defeats that expectancy thereby causing harm to the plaintiff.

█ We need not decide, however, whether plaintiffs sufficiently alleged a valid business expectancy. Even assuming the existence of such an expectancy, we find that Glover, in his capacity as the bank's attorney, was conditionally privileged to perform the acts and give the advice alleged in count III. Although an individual has a general duty not to interfere in the business affairs of another, the question whether such interference amounts to tortious conduct requires a balancing of societal values. The right to engage in a business relationship is accorded less protection than the right to receive the benefits of a contract. Consequently, interference in the business affairs of another by an outsider is even more likely to be privileged where no contract is involved. (*Beldon Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.) Plaintiffs' amended complaint failed to allege facts which would constitute actual malice. Therefore, in light of Glover's conditional privilege, plaintiffs did not effectively state a cause of action for tortious interference with a business expectancy, and count III was properly dismissed by the trial court.

For the reasons stated, the orders of the circuit court of Cook County dismissing counts II and III of plaintiffs' amended complaint and their second amended complaint are affirmed.

Orders affirmed.

WHITE, P. J., and McGILLICUDDY, J., concur.