SANTUCCI CONSTRUCTION COMPANY, Third-Party Plaintiff–Appellant, v. BAXTER & WOODMAN, INC., Third-Party Defendant–Appellee.

Second District   No. 85—0783

Opinion filed December 24, 1986.—Modified on denial of rehearing February 4, 1987.

548

Walter E. Trittipo, of Speckman & Trittipo, Ltd., of Chicago, for appellant.

Stephen R. Swofford, Michael F. Henrick, and H. Anne McKee, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:
Following the filing of a sixth amended complaint by the plaintiff, the village of Fox Lake, against defendant, Santucci Construction Company (Santucci), and other defendants not parties to this appeal, Santucci filed an amended third-party complaint against Baxter & Woodman, Inc., third-party defendant. Baxter & Woodman's motion to dismiss all six counts of the amended third-party complaint was granted, and Santucci appeals from the dismissal of counts I through IV pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)).

Santucci raises three issues on appeal: (1) whether the trial court erred in finding that Santucci could not recover economic damages resulting from Baxter & Woodman's negligence as alleged in count I; (2) whether the dismissal of counts II and III, which were based on negligent and intentional interference with contractual relationships and with prospective advantage, was an erroneous application of the *Moorman* doctrine (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443); and (3) whether the dismissal of count IV, which was based on a third-party beneficiary theory, was error.

In December 1975, the village of Fox Lake and Santucci entered into a contract for the construction of sewer and water facilities by Santucci as the general contractor. Prior to this contract, the village of Fox Lake entered into a separate contract with Baxter & Woodman, which provides civil and sanitary engineering services, wherein Baxter & Woodman was to provide various professional services for the sewer and water project, including formulation of plans and speci-

fications for the improvements, general supervision of the work of the contractors, and resident inspection of the work of the contractors if requested by the village.

Count I of the amended third-party complaint, a negligence count, alleged that the relationship between Baxter & Woodman, as project administrator, design engineer, and supervising engineer, and Santucci, as general contractor, gave rise to a duty by Baxter & Woodman to exercise that degree of skill and care usually and customarily exercised by professional engineering firms. Santucci alleged that this duty was breached by Baxter & Woodman as they negligently (1) failed to assure the existence of adequate funding prior to commencement of construction, (2) failed to assure that easement agreements had been secured and obtained by the village of Fox Lake from all property owners along the right of way of the construction project, (3) failed to allow Santucci adequate time for completion of the job in addition to the original contract schedule of 730 days after making revisions and changes in the contract plus calling for additional work, (4) failed to avoid causing unnecessary and uncontracted additional expenses following the termination of Santucci by the village thereby causing another company to needlessly undertake work already performed by Santucci, and (5) failed to avoid causing the obstruction, hindrance, and delay of Santucci and its successor in their work. Santucci alleged that Baxter & Woodman's negligence caused delays, caused it to perform its construction work inefficiently and out of sequence due to the unavailability of easements, and caused substantial additional costs. Santucci requested damages for increases in labor costs, increases in material costs, and increases in the cost of utilizing and maintaining equipment on the jobsite, as well as the cost of the otherwise avoidable mobilization and demobilization of equipment while performing the work out of sequence.

Counts II and III alleged negligent and intentional interference with contractual relationships and interference with prospective advantage. Santucci alleged that during the course of its performance of the contract, Baxter & Woodman engaged in a practice of communicating directly with Santucci's suppliers and materialmen for the purported purpose of determining the payment status of the accounts with Santucci and thereafter encouraged Santucci's suppliers to threaten to terminate or actually terminate their delivery of materials and providing of services, causing the filing of suppliers' liens and termination of deliveries and performance by Santucci's suppliers. It was further alleged that Baxter & Woodman abused its responsibility of supervising and administering the project for the village of Fox Lake

by encouraging and persuading the village to treat the actions of the suppliers and materialmen as grounds to terminate Santucci's performance of the contract. Santucci alleged that these actions were either done by Baxter & Woodman with malice, to deliberately cause injury to Santucci, or were done negligently and carelessly in violation of Baxter & Woodman's duty to administer and supervise Santucci's work.

Santucci also alleged that this interference prevented Santucci from completing the contract and obtaining the benefits it would have derived from its contractual relationship with the village and prevented it from obtaining the business advantage from the continuing relationship it would otherwise have had with the village. Santucci requested damages from the denial of the full benefits it would have been entitled to under the contract, for the total amount of its payment and performance bond, and for the destruction of its financial condition and business reputation with the consequent loss of its bonding capacity and future business.

Count IV of the amended third-party complaint alleged that Santucci is a third-party beneficiary of the contract between Baxter & Woodman and the village of Fox Lake based on the provisions of the contract, which provided that Baxter & Woodman would furnish general supervision of the work of the contractors, general supervision being defined in the contract as "including all office work for the proper control of payouts to the Contractors, change orders and the review of shop drawings, plus control of the project by visits as deemed necessary by the Engineer or as requested by the Village or its representatives." Santucci alleged that this amounted to an express agreement of the parties that Santucci, the contractor, should derive the direct benefits of Baxter & Woodman's administration of the contract payouts to Santucci, payment to Santucci, and of Baxter & Woodman's issuance of and direction to perform change orders. It further alleged that implied in the agreement was a promise to confer the benefit of other services upon Santucci, including the provision of adequate funding and the availability of all necessary easements. Santucci alleged that Baxter & Woodman breached these contractual duties by (1) failing to secure adequate funding, (2) failing to acquire all easements in a timely fashion, (3) failing to allow in good faith to Santucci the appropriate time extensions when issuing change orders, (4) failing to observe good faith in its administration of payouts to Santucci as it encouraged liens to be filed by Santucci's suppliers, (5) encouraging the village to terminate Santucci, and (6) refusing to recognize the value of material and supplies delivered to Santucci in

calculating progress payments to be made to Santucci by the village.

Santucci requested damages for these alleged breaches of its full benefits due under the contract, for the total amount of its payment and performance bond less the amount received by its indemnitee from the village, and for the destruction of its financial condition and business reputation.

Counts V and VI alleged causes of action for indemnity and contribution and are not part of this appeal.

Baxter & Woodman filed a motion to dismiss Santucci's amended third-party complaint stating that counts I, II, III, V, and VI were barred by the economic-loss doctrine, that its conduct was privileged so that counts II and III did not state a cause of action, and that there could be no recovery under a third-party beneficiary theory as the contract between Baxter & Woodman and the village of Fox Lake was intended to benefit only the village and its residents. Following the filing of memoranda of law by the parties, the trial judge, in a memorandum of opinion, dismissed the amended third-party complaint finding, *inter alia*, that the economic-loss doctrine barred any negligence action, including economic loss alleged to have been incurred by the torts of negligent and intentional interference with a contractual relationship and with a prospective advantage, and that Santucci was not a third-party beneficiary of the agreement between the village and Baxter & Woodman. Santucci's subsequent motion for reconsideration was denied.

■ Addressing first whether the negligence action as alleged in count I is barred under the economic-loss doctrine established in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, we note that several arguments are presented in Santucci's brief, which was filed on January 24, 1986. We need not recite and address each of these contentions as the recently filed opinion of our supreme court in *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, is dispositive of this issue. In *Anderson Electric*, the court reaffirmed its position that there can be no recovery in tort solely for economic losses—economic losses being defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to other property. (115 Ill. 2d 146, 149.) It also held that a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract. (115 Ill. 2d 146, 149-50.) In the instant case, the damages sought are for economic losses, and the holdings in

*Moorman* and *Anderson Electric* require the dismissal of the negligence action pleaded in count I.

■ Similarly, the allegations in counts II and III which purport to allege causes of action for the negligent interference with contractual relationships and prospective advantage are negligence actions seeking economic losses and were properly dismissed. We also note that recognition of a cause of action for such tortious interference with contractual relations and business expectations in Illinois has been for an intentional inference and has not been extended to negligent interference. *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 85, 401 N.E.2d 1356; see also *Swager v. Couri* (1979), 77 Ill. 2d 173, 187-89, 395 N.E.2d 921; *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union of Chicago No. 753* (1939), 371 Ill. 377, 381-82, 21 N.E.2d 308; *Futurevision, Inc. v. Dahl* (1985), 139 Ill. App. 3d 61, 66-67, 487 N.E.2d 127; Restatement (Second) of Torts sec. 766C (1979); Prosser, Torts sec. 129, at 938-42 (4th ed. 1971).

However, in count II Santucci also alleges an intentional interference with its contractual relationship with the village of Fox Lake by Baxter & Woodman's actions in encouraging Santucci's suppliers to terminate their delivery of materials and providing of services to Santucci which Baxter & Woodman then used as grounds to persuade the village to terminate the contract with Santucci. In count III, Santucci alleges an intentional interference with Santucci's prospective advantage in future business by the same acts of Baxter & Woodman alleged in count II. Santucci alleges that he was prevented from obtaining the business advantage of its plant and equipment, of the continuing goodwill attributable to its reputation, and from obtaining other benefits, including, but not limited to, additional work not specified in the contract and thereafter performed by another firm.

Santucci contends that the trial court, by dismissing these causes of action, ignored the fact that by so holding it implies the abolition of two previously recognized and significant causes of action under Illinois law which, in essence, allows recovery for intentional damage to a plaintiff's economic benefit. Santucci relies upon the decision in *Waldinger Corp. v. Ashbrook-Simon-Hartley, Inc.* (C.D. Ill. 1983), 564 F. Supp. 970, which has now been affirmed in part and remanded in part (*Waldinger Corp. v. CRS Group Engineers, Inc.* (7th Cir. 1985), 775 F.2d 781).

Baxter & Woodman responds that the supreme court in *Moorman* recognized only two exceptions to the economic-loss doctrine, neither of which applies to the causes of action asserted here for intentional inference with contractual relationships and prospective advantage.

Additionally, Baxter & Woodman maintains that Santucci failed to state a cause of action for both of these torts by failing to plead an unjustified interference.

The only case we have found directly deciding the issue of whether the holding in *Moorman* prohibiting the recovery of economic losses in a negligence or strict liability action also precludes the recovery of economic losses in a suit for intentional interference with contract is *Waldinger Corp. v. CRS Group Engineers, Inc.* (7th Cir. 1985), 775 F.2d 781. Applying Illinois law, the United States Court of Appeals for the Seventh Circuit held that as the economic interests present in intentional interference with contract are the same as those economic interests protected in the two tort exceptions in *Moorman*, economic losses should be recoverable. 775 F.2d 781, 791-92.

We are well aware that the court in *Moorman* only referred to two exceptions to the economic-loss doctrine, *i.e.*, where one intentionally makes false representations and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88-89, 435 N.E.2d 443.) Nevertheless, we do not believe the questions addressed and decided in *Moorman* and in the subsequent supreme court decisions of *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125, and *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, were intended to abolish causes of action for intentional interference with contract and prospective advantage.

■■ The purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect one's interest in his contractual relations against forms of interference which, on balance, the law finds repugnant. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190, 395 N.E.2d 921; see generally Prosser, Torts sec. 129 at 927-29 (4th ed. 1971); Restatement (Second) of Torts secs. 766, 766B, 767 (1979).) Because the very interest protected by the torts of intentional inference with contractual relations and prospective advantage is the reasonable expectation of economic advantage, economic losses are the damages recoverable. (*Waldinger Corp. v. CRS Group Engineers, Inc.* (7th Cir. 1985), 775 F.2d 781, 792; see also Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine*, 49 U. Chi. L. Rev. 61, 70-71 (1982).) *Moorman* and its progeny arose out of economic losses suffered from alleged negligence or strict liability whereas the economic loss in the

interference torts is occasioned by an intentional and improper interference with the performance of a contract or of a prospective contractual relation by third parties. We conclude that these interference actions are more similar to the two exceptions noted in *Moorman* and are still viable causes of action in Illinois.

■ Even finding that Santucci may bring these actions, however, does not resolve the issue completely. Baxter & Woodman maintain that inducing a breach of another's contract is privileged "if he is acting to protect a conflicting interest which is accorded equal or greater weight in the eyes of the law." It also argues that its actions fall within the protection of the privilege because it was acting as the agent of the village of Fox Lake in its supervisory and administrative capacity pursuant to its contract with the village. Baxter & Woodman cites several Illinois and Federal decisions which have found a conditional privilege to exist where the person charged with interfering is acting for the benefit of another.

Illinois courts have found a conditional privilege to exist where an attorney is acting for a client (*Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234-35, 440 N.E.2d 376), where officers of a corporation are acting for the corporation (*Swager v. Couri* (1979), 77 Ill. 2d 173, 189-90, 395 N.E.2d 921), where a co-employee is acting for the employer (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 759, 272 N.E.2d 708; see also *Stewart v. Ost* (1986), 142 Ill. App. 3d 373, 375, 491 N.E.2d 1306; *Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 320, 481 N.E.2d 968), where a private citizen acts pursuant to his right to petition a legislative body (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551, 229 N.E.2d 514), where an employee was acting in the scope of his employment with the Department of Labor (*Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 203, 474 N.E.2d 38), and where a union is acting on behalf of its members (*Connaughton v. Gertz* (1981), 94 Ill. App. 3d 265, 270, 418 N.E.2d 858).

Applying Illinois law, the United States Court of Appeals for the Seventh Circuit has held that Illinois would allow an engineer or an architect a conditional privilege to interfere with the construction contract of its principal. (*Waldinger Corp. v. CRS Group Engineers, Inc.* (7th Cir. 1985), 775 F.2d 781, 790; *George A. Fuller Co. v. Chicago College of Osteopathic Medicine* (7th Cir. 1983), 719 F.2d 1326, 1333.) Other authorities generally state that a privilege exists where a party seeks to protect a third person toward whom he stands in a relationship of responsibility, such as an agent protecting the interest of his

principal. Prosser, Torts sec. 129, at 943 (4th ed. 1971); Restatement (Second) of Torts sec. 770, comment *b*, at 46-47 (1979).

In the case at bar, Baxter & Woodman in its contract with the village of Fox Lake was employed to provide professional engineering services for the expansion of the village's sewer and water system including the formulation of plans and specifications on the improvements and general supervision and inspection of the work on the project by the contractors. General supervision is defined in the contract as "including all office work for the proper control of payouts to the contractors, change orders and the review of shop drawings, plus control of the project by visits as deemed necessary by the engineer or as requested by the village or its representatives." It is alleged in counts II and III of the amended third-party complaint that Baxter & Woodman interfered with Santucci's contract with the village and its future business relationship with the village by encouraging Santucci's suppliers to threaten to terminate their delivery of material and services to Santucci, which resulted in the filing of liens and termination of suppliers and services and which were ultimately used by Baxter & Woodman to persuade the village to treat the actions as grounds for termination of its contract with Santucci.

While we hold in line with the authority cited above that a professional engineer may have a conditional privilege to protect the interests of its principal where it is hired to supervise a project which would justify an interference which otherwise would be improper interference with the contractural relationships, we are not able to determine from this record whether the actions complained of against Baxter & Woodman by Santucci fall within this privilege. It has been stated that the question of whether a privilege can be established depends on two factors. First, a third party may purposely bring about a breach of plaintiff's contract with another when he is acting to protect a conflicting interest that is considered under the law to be of a value equal to or greater than plaintiff's contractual rights. Second, the third party's acts that bring about the breach must be legal acts and must not be unreasonable in the circumstances. (*Connaughton v. Gertz* (1981), 94 Ill. App. 3d 265, 270, 418 N.E.2d 858.) Although the agreement for consulting services between the village and Baxter & Woodman is in the record, the full extent of the duties of Baxter & Woodman as they relate to the interference complained of by Santucci was not developed below as the motion to dismiss apparently was pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) rather than section 2—619(a)(9), the latter of which could have supplied the necessary facts to support a privi-

lege. Thus, we must reverse the dismissal of counts II and III as they relate to the intentional interference with contractual relationships and prospective advantage and remand for the reasons stated.

We also conclude that Baxter & Woodman's additional argument presented in this court, but not contained specifically in its motion to dismiss below, that Santucci failed to allege that Baxter & Woodman's actions were without justification, can be addressed upon remand as this point was not ruled on by the trial court in its order dismissing the entire amended third-party complaint. We note that at least one decision has held that a pleading alleging an intentional interference with a contractual relationship is deficient if it fails to allege that the acts complained of were unjustified. *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234, 440 N.E.2d 376; see *Scholwin v. Johnson* (1986), 147 Ill. App. 3d 598, 609, 498 N.E.2d 249.

■ Finally, we consider whether count IV states a valid cause of action against Baxter & Woodman based on a third-party beneficiary theory. Santucci contends that it is a direct beneficiary of the contract for professional services between the village of Fox Lake and Baxter & Woodman in reliance on the following language in that agreement:

"I. The engineers agree to furnish and perform the various professional services listed below:
* * *
(e) furnish 'general supervision' of the work of the contractors.
* * *
III(a). 'General Supervision' is defined as including all office work for the proper payouts to the Contractors, change orders and the review of shop drawings, plus control of the project by visits as deemed necessary by the Engineer or as requested by the Village or its representatives."

One is a third-party beneficiary of a contractual provision if the parties to a contract, or at least the promisee, intended that the agreement confer a benefit on him. (*Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902.) A third-party beneficiary may sue for breach of a contract made for his benefit. (*Wilde v. First Federal Savings & Loan Association* (1985), 134 Ill. App. 3d 722, 731, 480 N.E.2d 1236.) However, the test is whether the benefit to the third person is direct to him or is an incidental benefit to him arising from the contract, and he has the right to sue on the contract only if the benefit is direct. *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257, 178 N.E. 498.

■ Here, while it is clear that Santucci was an incidental benefi-

ciary of the provision requiring Baxter & Woodman to make "proper payouts to the Contractors" and maintain "control of the project," it is equally clear that the only direct intended beneficiaries of this provision and the contract are the village of Fox Lake and its residents. See *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 257-59, 433 N.E.2d 1350.

Santucci argues that it was the "ultimate user" of the benefit intended by the contract provision, relying on *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, and that, while a secondary beneficiary, it is nevertheless a direct beneficiary of the contract, relying on *Reconstruction Finance Corp. v. Bairstow* (7th Cir. 1944), 140 F.2d 353. Neither argument, however, is persuasive. It is obvious that, under *Resnik*, the only "ultimate user" of the contract provision regarding supervision of the construction project here is the village and its residents. (See *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 386, 400 N.E.2d 918.) *Bairstow* is easily distinguishable on its facts. In *Bairstow*, the plaintiff was the holder of bonds containing the defendant's personal guarantee which stated, "[t]his guarantee shall inure to the benefit of all persons now or hereafter owners or holders of said bonds." (*Reconstruction Finance Corp. v. Bairstow* (7th Cir. 1944), 140 F.2d 353.) The defendant argued therein that the benefit ran only to the original holders of the bonds; but the court held that, based on the language of the guarantee, the plaintiff was a direct beneficiary and could enforce the contract, even though the obligation was not undertaken primarily for his benefit. Santucci urges that, based on *Bairstow*, it can sue on the contract as a secondary, but direct, beneficiary of the contract. Santucci, however, is clearly only an incidental beneficiary of the contract here, and count IV was properly dismissed by the trial court.

In summary, the dismissal of count I is affirmed, the dismissal of counts II and III is affirmed in part and reversed and remanded in part, and the dismissal of count IV is affirmed.

Affirmed in part, reversed in part, and remanded.

HOPF and LINDBERG, JJ., concur.