Van Voorhis, J.
In this action brought to recover commissions, plaintiff alleged that it was employed by defendants to procure for them a 10-year contract to supply newsprint to defendants and that plaintiff was to be paid a commission of 3% of the gross sales by the seller according to the custom of the newsprint trade, that plaintiff found a seller willing to sell on defendants’ terms but defendants refused to consummate the transaction.
Special Term held that plaintiff alleged a contract of employment by defendants and that the writing relied on tended to support its claim and that plaintiff would be entitled to recover its damage if, upon proof, it was found that defendants employed plaintiff and refused to engage in the contract procured upon their terms and breached their contract with plaintiff.
*494 The Appellate Division held that: “Fairly read, the letter reserves to defendants the right to accept or reject any proposed contract plaintiff would secure and, therefore, defendants’ rejection of a proposed contract did not ground the action for breach of agreement which is attempted to be alleged in the complaint. ’ ’
Justices Breitel and Steuer dissented, in part, being of the opinion that the complaint was defective only in that it failed to allege that the mill procured by plaintiff was not only willing to supply defendants’ needs as authorized in the letter, but also able to perform, and that plaintiff should be given an opportunity to replead.
The sufficiency of the complaint must be adjudged by the wording of the letter thereto annexed, which reads as follows:
“NATIONAL ENQUIRER Executive Offices 1151 Third Avenue New York 21, N. Y.
TRafalgar 9-1111
January 26, 1959
Mr. J. C. McNicoll Lennex Exports Limited 4920 Western Avenue Montreal, P.Q., Canada
Dear Sir:
Concerning our various conversations with you we herewith authorize you to begin negotiations in our behalf for contracts covering the following:
Approximately 2,500 tons yearly of standard Canadian newsprint, 32 pound basis, quality to be accepted by us in rolls 30 and 60 inch widths in the proportion to be determined in due course or from time to time. Diameter to be maximum 35 inches or any other we may stipulate from time to time.
Price, $134 per ton of 2000 lbs. F.O.B. our siding New York freight area.
Terms of the contract to be for 10 years.
The contract we are authorizing you to negotiate on our behalf is to be entertained direct between ourselves and the mill in *495 Canada, your capacity being that of agent of the mill and all the terms of the contract being the normal one now in existence between Mill-U.S. Publishers.
Would you kindly confirm to us at your earliest convenience the name of the mill and let us have a prototype of the contract for examination by our attorneys as well as a sample of the paper.
Very truly yours,
/s/ Generoso Pope, Jr.
Generoso Pope, Jr.
GP:io Publisher ”
The reason for the rejection of the contract by defendants had nothing to do with the merits of the deal, or defendants’ need for the newsprint, but was due to their subsequently formed desire to deal with another paper mill than the one procured by plaintiff. Defendants’ letter reads as follows:
“NATIONAL ENQUIRER Liveliest Paper in the World 15j 1151 Third Avenue New York 21, N. Y.
Telephone: TRafalgar 9-1111
July SI, 1959
Mr. J. C. McNieoll Lennex Exports Limited 4920 Western Avenue Montreal 6. Canada Dear Mr. McNieoll:
In the absence of Mr. Pope who is on vacation, I am replying to your letter of the 22nd.
Since I last spoke to you, sometime in March, we have been able to resolve our differences with the Tenafly Printing Company. We finally have a contract for the printing of The National Enquirer. However, under the terms of this agreement, the printer must supply the newsprint.
I am sure you can now appreciate our reluctance in further pursuing the objectives outlined in our letter of January 26th, before this matter was settled.
*496 We appreciate your past cooperation and regret our present inability to entertain a contract with a Canadian mill.
Sincerely,
Disto M. Gallo,
DMG :mm General Manager ’ ’
The contract between the parties, formed by this exchange of correspondence, does not make payment of commissions dependent upon the acceptance by defendants of the deal procured by plaintiff. The contract shown by the correspondence is specific as to the quantity and nature of the newsprint to be procured, as well as its price, and, although the quality was “ to be accepted by us ”, that did not signify that defendants were given the right by caprice or whim to refuse to approve. The correspondence indicates that the refusal to enter into this agreement procured by plaintiff had nothing to do with the quality of the newsprint, but was due to the circumstance that they preferred to do business with their old supplier with whom they had resolved their differences after plaintiff had been hired and had done the work for which he had been employed.
Some emphasis is placed on the language of the letter that plaintiff is authorized “ to begin negotiations in our behalf for contracts covering the following ’ ’, and upon the later language referring to the contract ‘ ‘ we are authorizing you to negotiate on our behalf ’ ’, as though this were merely an authorization to negotiate without there being any obligation on the part of the defendants to plaintiff unless a contract were actually made. This is a motion to dismiss a complaint for insufficiency, and plaintiff is, of course, entitled to the benefit of everything that may be drawn from the complaint by reasonable and fair intendment. It was contemplated, to be sure, that if and when a contract of purchase and sale were made plaintiff would arrange to be paid by the seller. Nevertheless, where, as here, the employer of the agent itself prevents the earning of the commission by refusing to deal on the basis which was offered to the agent, the purchaser is obligated to pay after the agent has procured a seller on the terms and for the consideration, quantity and quality proposed by the purchaser (Pease & Elliman v. Gladwin Realty Co., 216 App. Div. 421). Even though the broker would be paid by the other party to the transaction, *497 if the deal went through, it would be contrary to established rules to exempt an employer of a broker from the payment of a commission if, as the trier of the fact here could find, the broker has performed what he was hired to do, and the principal has refused to accept the product of the broker’s labors arbitrarily (insofar as concerns anything having to do with the merits of the transaction) in the absence of a clause in the agreement with the broker, stating that a commission shall not be payable unless the employer actually enters into a contract of sale with the party whom the broker has procured.
The judgment appealed from should be reversed and the motion to dismiss the complaint denied, with leave to amend as indicated in the dissenting opinion at the Appellate Division, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld, Burke, Foster and Scileppi concur.
Judgment reversed and matter remitted to Special Term for further proceedings in accordance with the opinion herein, with costs in this court and in the Appellate Division.