Samuel J. Silverman, J.
This is a motion pursuant to rule 3211 (subd. [a], par. 7) of the Civil Practice Law and Buies *917 to dismiss the second amended complaint for failing to state a cause of action, and for summary judgment pursuant to subdivision (c) of rule 3211.
The first cause of action of the complaint attempts to allege a cause of action against the attorney defendants for conspiring to defraud the plaintiff of its rights under a contract entered into December 20,1960 with other named defendants. The cause of action fails to add anything material to the original and first amended complaints, both of which were dismissed by this court.
The plaintiff has added a second cause of action against the defendant attorneys for inducing a breach of the aforementioned contract. But again the complaint fails to state any facts to show any acts by the attorneys in furtherance of a tortious conspiracy. The complaint is again insufficient.
This is plaintiff’s third attempt to plead a cause of action against the attorney defendants. Plaintiff has not asked for leave to plead again in the event that the motion is granted. (See rule 3211, subd. [e].) The question arises whether plaintiff’s pleading difficulty is merely a reflection of a basic deficiency in its case. Accordingly, evidence having been submitted by both sides, the court will under subdivision (c) of rule 3211 treat this motion as a motion for summary judgment.
On December 20, 1960, plaintiff as “ Seller” entered into an agreement with defendant Economy Bias Binding Co., Inc. (the “ Purchaser ”) to sell plaintiff’s binding business. In part consideration, the Purchaser agreed to purchase from the Seller all the Purchaser’s piece goods requirements for a period of 15 years and to pay a premium above the market price of such goods for the first 5 years, which premiums should total not less than $25,000 per year, “ provided Purchaser remains in business for such five-year period.” “ If Purchaser should, discontinue business prior to the expiration of the said five-year period, ’ ’ the $25,000 guarantee obligation would terminate at the end of the full year in which business was discontinued.
Paragraph Ninth of the agreement further provided: “ Ninth: If the purchaser shall discontinue the bias binding business at any time prior to January 31,1976 the Seller shall have the right to reengage in the business of manufacturing and selling bias binding and shall have the right to sell to any of the customers then on the books of the Purchaser. Purchaser, in such event, agrees to make its customer list available to Seller and to inform the trade that its customers were transferred to the Seller. However, this provision shall not be construed to deny to the Purchaser the right to sell its business and goodwill including the customers thereof, as a going business, subject to the obli *918 gations of this contract, to be assumed by Purchaser of said going business.”
Plaintiff alleges that in April, 1963 two of the executors of the estate of Morris Ladin, deceased (the sole or majority stockholder of the Purchaser), approached the president of plaintiff corporation to see if it would purchase the assets of Economy Bias Binding Co., Inc., or whether the plaintiff would cancel the December 20, 1960 agreement for a consideration of $10,000. Overtures for the sale of the Purchaser’s going business were allegedly being made simultaneously to a Mr. Morris Black and Mr. Herbert Jacobs, a vice-president and employee of the Purchaser. Plaintiff claims that subsequent to its notifying the executors that it was not interested in purchasing the going business of the Purchaser and that it would not terminate its contract, Economy Industries, Inc., a new corporation organized (and presumably controlled) by Mr. Herbert Jacobs, purchased the machinery, fixtures and inventory of Economy Bias.
Plaintiff’s affidavits allege that a plan had been formulated by the attorney defendants to make it appear that the sale was only of tangible assets when in fact it was a sale of the going business.
I shall assume, arguendo, that a breach of contract — actual or anticipatory — and inducement of the breach by Economy Industries, Inc. and Jacobs have been alleged.
There remains the question of the participation and the liability, if any, of the defendant attorneys, the attorneys for Economy Bias and for Economy Industries, in the transaction between those parties.
There is no suggestion that these attorneys had any personal interest in the contracts or transactions. Interpreting the affidavits most favorably to plaintiff, the affidavits indicate that these attorney defendants knew of the contract between plaintiff and Economy Bias; that they advised their respective clients that the transactions in the form ultimately consummated would not subject them to liability under the contract and would avoid (or terminate) obligations thereunder (or alternatively they advised their clients of the legal risks involved); that perhaps they devised the transaction and certainly that they drew the appropriate documents and supervised the legal steps in the consummation.
Defendant attorneys may have been right or wrong in their advice to their clients. If they were right, that would presumably be the end of the matter, for surely attorneys have aright to give their clients correct legal advice. If, on the other' hand, the attorneys were wrong in their advice to their clients,, *919 this may mean that their clients are liable to plaintiff. But it does not follow that the attorneys are liable. Even if we assume that the attorneys’ conduct if performed by others might constitute inducement to breach of contract, the fact that the attorneys were practicing their profession itself confers a privilege which immunizes them from liability at least on the facts of this case. Thus, the Restatement of Torts states:
“ § 772. Privilege to Advise.
‘1 One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by giving honest advice to the other within the scope of a request for advice made by him * * *.
‘ ‘ Comment:
“ a. Basis of the privilege. This privilege is given to protect the public and private interests in freedom of communication and friendly intercourse. In some instances the privilege protects the public and private interests in certain professions or businesses. Thus, the lawyer, the doctor, the banker, the investment counselor, and the efficiency expert need this privilege for the performance of their tasks.” (See, also, Prosser, Torts [2d ed.], § 106, p. 737.)
Public policy requires that attorneys — acting strictly in their professional capacities as agents and not as principals — shall be free to advise their clients without fear that the attorneys will be personally liable to third persons if the advice the attorneys have given to their clients later proves erroneous. As stated long ago by the Court of Appeals in Ford v. Williams (13 N. Y. 577, 584 [1856]): “ But where one acts only in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass he is not liable, though what he does may aid another party in its commission. ’ ’
Summary judgment is granted dismissing the complaint as to defendants Siwek, Zimmerman & Silberkleit and defendant Michael M. Feinstein.