■ STATE OF NEW YORK, Respondent, v CARVEL CORPORATION et al., Defendants, and HERBERT F. ROTH, Appellant. — Resettled order, Supreme Court, New York County (Myers, J.), entered April 21, 1980 denying the motion of defendant-appellant Roth to dismiss the complaint for failure to state a cause of action or, in the alternative, for summary judgment, in this action by the Attorney-General pursuant to article 22 of the General Business Law, seeking injunctive relief and civil penalties against defendants for their alleged violation of the General Business Law (the Donnelly Act) which prohibits contracts

or agreements for monopoly or in restraint of trade, affirmed, without costs or disbursements. Giving plaintiff the benefit of every reasonable inference to be drawn from the complaint (see *Westhill Exports v Pope,* 12 NY2d 491), we find that Special Term correctly denied defendant Roth's motion to dismiss it. Paragraph 18 of the complaint alleges that all the defendants engaged in conduct that violated the Donnelly Act. Paragraph 19 alleges particular conduct including illegal tying and exclusive dealing arrangements, attempts to monopolize and price fixing. Paragraph 20 alleges specific practices of the defendants to further this conduct, including: "exercis[ing] inordinate control over the businesses of Carvel franchisees * * * invad[ing] and disrupt[ing] lawful meetings at which franchisees were attempting to organize support for franchise legislation pending in the Congress of the United States * * * us[ing] Carvel's dominant economic position over its franchisees, by employing fear, threats, harassment". In its course of identifying each defendant by a separate subparagraph of paragraph 2, the complaint identified Roth as a director and an attorney for Carvel. Not all of Carvel's directors were named as defendants and Roth is a sometimes outside attorney for Carvel, acting as attorney, in his own words "on occasion * * * in some (but not all) lawsuits in which it may be defendant or plaintiff". In none of the activities hereinafter described was Roth alleged to have been acting either as a director or as an attorney for Carvel. An affidavit of a Deputy Assistant Attorney-General, a witness to the events, particularizes the conduct of Roth alleged to be in furtherance of the Donnelly Act violation. An organization of Carvel franchisees had been formed to discuss grievances against Carvel and its practices and to support pending legislation to protect franchisees. A meeting of the group at a Queens College building was called. No representatives of Carvel were invited. When the franchises began arriving, Roth was seen with two men, Wojda and Urezzio, in the lobby of the building. Urezzio was confronting the Carvel dealers as they entered, warning them not to attend the meeting, that they were jeopardizing their relationship with Carvel and were risking serious consequences to their business. Roth went past the registration desk into the meeting room. He was seen standing in front of the room, repeatedly and loudly demanding that he be allowed to attend the meeting and address the group. He was repeatedly asked to leave but persisted in staying. He attempted to find out the names of the dealers who were running the meeting and who were demanding that he leave. His tone was described as loud, intemperate and intimidating. At this point a commotion had developed outside the meeting room. Urezzio and Wojda were there, the former telling franchisees that Carvel was very displeased with their actions, they were being ungrateful and disloyal and that 500 franchises had been lost and two lawyers disbarred for similar activities. In the meantime, a building security guard had been summoned to eject Roth, who was, even then, unwilling to leave. When he was told that he was not permitted to attend the meeting, he loudly declared that he had a right to be there. He demanded to know who had contracted for the use of the room and threatened to go to court to get that information. At this point, Roth claimed to be a "Federal attorney". Finally, Roth, Urezzio and Wojda were escorted by the security guard and one of the dealers off the premises. Our dissenting brother apparently concedes the propriety of Special Term's denial of the motion to dismiss the complaint for failure to state a cause of action. He would, however, grant summary judgment exculpating Roth as a matter of law for the reason that "[a]s general counsel to Carvel, the only action alleged by the plaintiff was the attorney's attempts to speak, uninvited, at a meeting of Carvel franchisees". Apart from such a benign view of Roth's activities, the record does not support a finding that he was "general counsel to Carvel", either in his own words or in the words of the

affiant vice-president of Carvel who states that Roth was not an attorney for Carvel in any of the areas concerned in this suit. Roth did not argue at Special Term, nor does he contend here, that he should be exculpated as an attorney for Carvel. The plaintiff itself disclaims any allegation or intention that Roth be held liable for any acts as Carvel's attorney. It is Roth's contention that the mere fact that he is a director of Carvel is not a sufficient basis for antitrust liability and that a corporation cannot conspire with its directors so as to constitute a Donnelly Act violation. But the plaintiff does not complain of any acts taken by Roth in his capacity as a director and disclaims any such intention. Furthermore, injunctions and penalty actions under the Donnelly Act are authorized against directors of a corporation (see General Business Law, §§ 342, 342-a) and the complaint alleges prohibited activity between and among several independent persons and corporations. Concur — Sandler, Silverman and Lynch, JJ.

Kupferman, J. P., dissents in a memorandum as follows: Defendant-appellant, an attorney, appeals from a denial of his motion for summary judgment in an action brought against the Carvel Corporation, various of its directors and affiliated corporations and the attorney. In question is the liability of an attorney director for alleged wrongful acts on behalf of, and in conspiracy with, the Carvel Corporation in violation of article 22 of the New York General Business Law (§ 340 *et seq.;* the Donnelly Act). (See, also, the discussion of New York antitrust laws in: Marketing Laws Survey: "State Antitrust Laws", vol I, W. P. A., 1940, p 441 *et seq.)* The fact that the attorney is a director of the Carvel Corporation, which is accused of restraint of trade, does not, in and of itself, subject him to liability because of this status. Something more than mere status of a corporate officer must exist before individual liability can attach. *(Michaels v Lispenard Holding Corp.,* 11 AD2d 12, 14; *Turntables, Inc. v M. B. Plastics Corp.,* 31 AD2d 792.) Moreover, appellant has asserted that he is not part of the management of the Carvel Corporation. This is supported by the uncontroverted affidavit of a vice-president of the corporation. As general counsel to Carvel, the only action alleged by the plaintiff was the attorney's attempts to speak, uninvited, at a meeting of Carvel franchisees. As an attorney, he is not subject to liability to third parties unless his conduct rises to the level of a tortious act. *(Drago v Buonagurio,* 46 NY2d 778.) Surely, advice of an attorney to a client is not actionable, and, while erroneous advice might subject his client to liability, it does not follow that the attorney, himself, is liable. *(D. & C. Textile Corp. v Rudin,* 41 Misc 2d 916.) As our colleague, Mr. Justice Silverman (then at nisi prius) stated in *Rudin (supra,* at p 919, quoting *Ford v Williams,* 13 NY 577, 584) " 'But where one acts only in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass he is not liable, though what he does may aid another party in its commission.' " Where attorneys have been guilty of fraud, collusion, or a malicious or tortious act, liability has been upheld. *(Gifford v Harley,* 62 AD2d 5; *Hahn v Wylie,* 54 AD2d 629; *Sullivan v State Div. of Human Rights,* 73 AD2d 946.) Also, in situations where the attorney was at the heart of a criminal scheme *(Newburger, Loeb & Co. v Gross,* 563 F2d 1057). The plaintiff contends that the attorney's statement to the meeting of Carvel franchisees was "loud, intemperate, and intimidating." Other than that, there has been no showing that the defendant has done anything other than to act as general counsel, albeit in an active manner. "It is recognized that '[t]he public interest * * * demands that attorneys, in the exercise of their proper function as such, shall not be civilly liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients.' " *(Hahn v Wylie, supra.)* There has been no showing that the actions here have been anything but in the course of an attorney's proper function. Although the

plaintiff contends that its conclusory allegations will be proven later, and that discovery is needed to do this, there is no showing of facts sufficient to defeat this motion for summary judgment. Once the defendant makes a prima facie showing that the action lacks merit, the plaintiff must come forward with evidentiary proof to show there is a bona fide issue requiring trial. Conclusory allegations are not enough to create a cause of action without a showing of wrongful or unlawful acts. (Rothschild v World-Wide Autos. Corp., 24 AD2d 861; Jennings v Burlington Inds., 19 AD2d 877; Matsushita Elec. Corp. of Amer. v Jamaica Gas & Elec. of Great Neck, 44 AD2d 708; Di Sabato v Soffes, 9 AD2d 297.) The Donnelly Act (General Business Law, § 340 et seq.) specifically permits the Attorney-General to issue subpoenas in order to gather information relevant to an inquiry into violations of the act. (Matter of Amos Post, Inc. v Attorney-General of State of N. Y., 70 AD2d 750.) Since this may be done prior to trial, any information indicating culpability on the part of the attorney could have been gathered then. (See Report of Special Committee to Study New York Antitrust Laws of New York State Bar Assn., 1957, p 41a.) In fact, the Attorney-General has been obtaining information since at least 1978 (see Matter of Crowley Foods v Lefkowitz, 75 AD2d 940) which is more than enough time within which to have obtained any information needed to bolster its position against this attorney. To date, the court has recognized liability of a lawyer to third parties only where conduct has fallen within one of the acknowledged categories of tort or contract. (Drago v Buonagurio, 46 NY2d 778, supra.) As long as one has done no more than serve as an attorney, no matter how zealously, there is no liability. Public policy requires that attorneys should be free to advise their clients and voice their opinions, without fear of liability to third parties, when acting on behalf of their clients. (D. & C. Textile Corp. v Rudin, supra.) Unless an attorney is in this position, his usefulness to his client is impaired. Holding the attorney liable in the performance of his function as corporate counsel, without any showing of culpability, can result in a chilling effect on all lawyers inasmuch as it creates a problem with respect to his duty to give undivided loyalty to the client and his own self-interest in avoiding personal liability. An attorney owes a duty of undivided allegiance to his client, and his professional judgment must be exercised solely for the benefit of such client.[*] The defendant-appellant's motion for summary judgment dismissing the complaint, as against him, should be granted.

---

[*] Canon 5 of the Code of Professional Responsibility states: A lawyer should exercise independent professional judgment on behalf of his client. (See, also, EC 5-1 through 5-14.)