In the Matter of ROBERT S. PERSKY, for Reinstatement as an Attorney.

First Department, March 24, 1983

**APPEARANCES OF COUNSEL**

*William Jarblum* of counsel (*Jarblum & Solomon, P. C.,* attorneys), for respondent.

*Alan S. Phillips* of counsel (*Michael A. Gentile,* attorney), for the Departmental Disciplinary Committee for the First Judicial Department.

**OPINION OF THE COURT**

*Per Curiam.*

Respondent has moved for an order confirming the July 9, 1979 report of the Committee on Character and Fitness and reinstating him as an attorney.

Respondent was admitted to practice on January 20, 1953 in the First Department. He was suspended by this court for two years, effective December 15, 1975, because of his conviction of four counts of filing a false statement with the Securities and Exchange Commission.

This is his fourth application for reinstatement. He previously applied to this court on December 16, 1977, December 30, 1978, and January 18, 1982. All three applications were denied. Subsequent to the order of suspension and before respondent's first application for reinstatement, his involvement in the reorganization of Newburger, Loeb & Co., an episode which antedated our order of suspension, came to light. As a result, when respondent first applied for reinstatement we referred the question of his conduct in that matter to the Committee on Grievances. After a hearing the committee, taking into account that respondent had "in effect" been suspended for an additional year beyond his original two-year suspension, reprimanded him for his serious professional misconduct in that matter.

The Departmental Disciplinary Committee, which opposed respondent's application for reinstatement in 1982 on the ground that he had failed to carry his burden of establishing, by clear and convincing evidence, that he possessed the requisite character and fitness to practice law, does not oppose the present application. Nor does it believe that the matter should be referred to it for any further review. The Committee on Character and Fitness, charged with investigating respondent's background, and to which the matter was referred after his second application, was unable to find any circumstance that would reflect adversely on his application. Respondent notes that more than seven years have elapsed since the date he was ordered suspended for two years, and states that he has faithfully complied with the order of suspension. Thus, respondent has been suspended for a period over three times as long as the one imposed by this court in 1975. In our view, further denials of his application cannot be justified, absent a showing that he has not complied with our order or that he does not possess the requisite character to practice law.

Under the Rules and Procedures of the Committee on Grievances (§ 3.35 [a]), effective October 1, 1977, respondent was not entitled to appeal the reprimand for his conduct in the Newburger, Loeb matter, although he could have demanded that a disciplinary proceeding be instituted before the court. He accepted the reprimand. The committee itself did not have any right of appeal from its hearing panel's decision, although it had the option, which it did not exercise, to reprimand respondent with referral to this court with a recommendation as to censure, suspension or disbarment (rule 3.27 [d] [3]). Thus, insofar as the conduct involved in the Newburger, Loeb matter is concerned, respondent has been disciplined, and the matter is not subject to further review.

Moreover, the Hearing Panel of the Committee on Grievances, after 20 hours of testimony and additional deliberations, dismissed the one charge which respondent was permitted to contest, and found against him only on the charges it believed it was precluded from considering *de novo* because of collateral estoppel. Significantly, the hearing panel refused to sustain the charge that respondent had rendered an opinion that the transfer of Newburger, Loeb partnership assets without the consents of three partners was legal when, in fact, he knew such transfer to be illegal. The hearing panel found:

"There is no doubt that [respondent] knowingly and intentionally participated in the transaction and, indeed played an active and central role in its consummation. Nevertheless, we do not believe that the [respondent] knew that the transfer was wrongful when he counseled its accomplishment and opined as to its legality. The question, as a matter of law, of the legality of the transfer absent the consents of Bleich and Donoghue, was not completely free from doubt. At least prior to the District Court opinion, arguments could be marshalled, although not ultimately persuasive for the position that the transfer was permissible without their consents.

"In addition, representatives of 17 law firms were present at the closing and were informed that the Rosenman firm would not give the requisite opinion. Nonetheless, after being presented with [respondent's] opinion that the

transfer was lawful, apparently no objection was made by any counsel in attendance and all parties agreed to the closing. In fact, the partner of Rosenman Colin who had indicated that his firm could not give such an opinion, did not state any objection or dissent when [respondent] offered his opinion, and his clients also participated in the closing."

Thus, at least on the ethical question, a significant portion of the negative language of the opinions of the District Court and the Circuit Court of Appeals insofar as it related to respondent is undercut by the hearing panel's finding.

The dissent alludes to respondent's failure to inform the court at the time he was suspended that he was a defendant in a civil action as a result of his involvement in Newburger, Loeb. But, as respondent notes, at the time he was only a litigant and the action had not been resolved against him. As for his failure to inform the court at the time of his first application that he had been held liable, the Committee on Character and Fitness has found that while respondent would have been wiser to include it, there was no intent to conceal since the matter had been reported on the front page of the *New York Law Journal*. In any event, the judgment in the action has apparently been fully satisfied.

We note that respondent has complied with all the orders of this court, and apparently any judgments against him have been satisfied. He has supplied several affidavits from distinguished members of the Bar, all of whom, while noting his past transgressions, support his petition. The Character Committee itself noted:

"We are also impressed with the many glowing, but factual, affidavits of members of the judiciary and of the general bar and others, who have known [respondent] for many years. Each of these affiants, with knowledge of [respondent's] convictions and of his involvement in the Newburger, Loeb matter, believes that [respondent] possesses the requisite character and fitness for membership at the bar.

"Your committee recommends [respondent's] reinstatement."

Any suggestion that some sinister element of respondent's character has slipped through the cracks of the disciplinary apparatus ignores that both the Committee on Character and Fitness and the Departmental Disciplinary Committee, when given the opportunity to investigate, or to oppose, either recommended reinstatement or did not oppose the petition. Indeed, the former Chief Counsel to the Departmental Disciplinary Committee, after having this entire matter remitted to him by this court on one of the earlier applications "for the purpose of reviewing, *de novo,* the entire record concerning [respondent] and drawing charges for further suspension or disbarment", submitted a detailed affidavit on May 20, 1980, in which he recited that he had reviewed the entire record, and could find "no basis for filing any additional charges against [respondent] beyond those which were the subject of the proceedings which resulted in his suspension by this Court on December 15, 1975, and which resulted in the Reprimand by the Hearing Panel of the Committee on Grievances on December 28, 1978."

In one form or another respondent's applications have been before this court at least four times. His transgressions are well known to the Disciplinary and Character Committees, as well as to this court. He has supplied whatever additional information was requested of him, by the committees and by the court. He has paid all the penalties and undergone all the disciplines imposed on him. He has met his burden. He should now be reinstated.

MURPHY, P. J. (dissenting). Respondent Persky moves for an order confirming the report of the Committee on Character and Fitness and reinstating him to the Bar. He was suspended, as of December 15, 1975, for a two-year period for knowingly filing a false 10K statement with the Securities and Exchange Commission (SEC) on behalf of Microthermal Applications, Inc. (*Matter of Persky,* 49 AD2d 353). The 10K statement listed about $500,000 in certificates of deposit which did not exist. He was convicted of filing a false report and of conspiracy to defraud in the purchase and sale of securities. Both convictions were affirmed. (*United States v Zane,* 495 F2d 683, cert den 419 US 895, mot for new trial den 507 F2d 346, cert den 421 US 910;

*United States v Persky,* 520 F2d 283.) Respondent served four months in prison and was placed on probation for two years. His suspension was limited to a two-year period because the facts, at that time, indicated that he had "an otherwise unblemished record." In consequence of his conviction for filing a false report, he was automatically suspended from practicing before the SEC. He was also suspended from practice by the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and the United States District Court for the Southern District of New York.

When this court's suspension was imposed, neither this court nor the Departmental Disciplinary Committee knew that respondent was a major figure in a civil action pending in the United States District Court for the Southern District of New York. He did not volunteer that information to this court or the Disciplinary Committee. During his suspension, judgment was entered against him in that action. (*Newburger, Loeb & Co. v Gross,* US Dist Ct, SDNY, 71 Civ 685, July 7, 1976, affd in part, revd in part & remanded 563 F2d 1057, cert den 434 US 1035.) In their opinions, District Judge OWEN and Circuit Judge LUMBARD detailed the flagrant transgressions that led to respondent's liability in *Newburger.* Those transgressions will be highlighted to the extent necessary to show that respondent is unfit to practice law.

On January 1, 1969, Charles Gross became a general partner in Newburger, Loeb & Co. (the Partnership). Gross made an initial capital contribution of $400,000. Subsequently, he contributed an additional $400,000 and became the firm's managing partner. Mabel Bleich and Jeanne Donoghue became limited partners by each contributing $75,000 to the Partnership.

In the summer of 1970, the Partnership had financial difficulties. Gross was pressured to step down as managing partner. He gave his notice of withdrawal from the Partnership on August 31, 1970, effective September 30, 1970. Fred Kayne replaced Gross as managing partner. Kayne and Charles Sloane, a general partner, immediately retained a consulting firm, Risher, Muh & Co., Inc., to advise them. At the suggestion of Risher, Muh & Co., Inc., Kayne

and Sloane retained Kumble, Underberg, Persky and Roth as legal counsel. Respondent Persky was the partner in Kumble, Underberg then in charge of corporate matters.

In the fall of 1970, Muh, Risher, Sloane, Kayne and Persky decided to transform the Partnership into a corporation; Newburger, Loeb & Co., Inc. (the Corporation) was formed for that purpose. The promoters of the Corporation, under the counseling of Persky, hoped to gain control of the Partnership assets for a small investment. Furthermore, this reorganization would result in the substantial forgiveness of debts owed by certain general partners. The Circuit Court labeled this plan of reorganization a form of self-dealing in violation of the fiduciary obligations owed to Gross, Bleich and Donoghue. (*Newburger, Loeb & Co. v Gross,* 563 F2d 1057, 1080.)

Initially, the respondent acted as the attorney for the Corporation. Despite the use of coercive tactics, neither the respondent nor the promoters of the Corporation could obtain the consent of Gross, Bleich and Donoghue to the transfer of the Partnership assets. Therefore, Rosenman, Colin, Kayne, Petschek, Freund & Emil, counsel to the Partnership, would not issue an opinion letter that the transfer could occur without the consent of all the limited partners. Suffice it to say that respondent Persky, then acting as special counsel to the Partnership, issued an opinion letter stating that the transfer was valid under section 98 of the Partnership Law.

After the closing, the Corporation brought suit against Gross, Bleich, Donoghue and their former firm, Gross & Co., upon a so-called "churning" claim. The District Court dismissed the "churning" claim in *Newburger* (*supra*), and that dismissal was affirmed by the Circuit Court. In *Newburger,* the District Court and the Circuit Court found that Persky and other parties were liable on several counterclaims asserted by Gross, Bleich and Donoghue. However, the Circuit Court reversed the award of punitive damages and remanded the action for a recomputation of damages.

Two passages in the Circuit Court opinion are particularly noteworthy. First, the Circuit Court sustained liability against respondent Persky and the promoters of

the Corporation on two different theories (*Newburger, Loeb & Co. v Gross, supra,* p 1074): "Judge Owen found that Kayne, Risher, Sloane and Muh, guided by Persky, had engaged in a plot to gain control of the assets of the Partnership in the course of which they participated in at least two separate wrongs to the defendants: (1) the 'kno,w-ing' violation of Donoghue and Bleich's rights as limited partners under section 98, which he found to be a conversion of their capital interests in the Partnership; and (2) the violation by the members of the Partnership of the fiduciary obligations owed to Gross, Bleich and Donoghue. Thus, Judge Owen found that the partners had lent themselves to the goals of the promoters' plan by 'affirmatively permitting' the transfer to take place in violation of section 98, and by their 'knowing acquiescence' in the promoters' use of 'various baseless litigation threats.' We hold that these findings are supported by the record and are sufficient in law to impose liability upon the Corporation and the additional defendants, both on a conspiracy theory and on the related principle that one who knowingly participates with a fiduciary in a breach of trust is liable to the beneficiary for any damage caused thereby. See *Wechsler v. Bowman,* 285 N.Y. 284, 291 * * * modified, 286 N.Y. 582 * * * (1941); 5 Scott on Trusts, § 506 (3rd Ed. 1967)."

The Circuit Court focused on the role of respondent Persky in the wrongdoing (*Newburger, Loeb & Co. v Gross, supra,* p 1080):

"We also reject Finley, Kumble's argument that it cannot be held liable for the acts of the Partnership and the Corporation. Under ·New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he 'did something either tortious in character or beyond the scope of his honorable employment.' *Dallas v. Fassnacht,* 42 N.Y.S.2d 415, 418 (Sup. Ct. N.Y. County 1943). Thus, while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others. See *Steinberg v. Guild,* 22 App.Div.2d 775, 776 * * * (1st Dept. 1964), aff'd,

16 N.Y.2d 791 * * * (1965); *D. & C. Textile Corp. v. Rudin,* 41 Misc.2d 916, 918-19 * * * (Sup.Ct. N.Y. County 1964); *Kasen v. Morrell,* 18 Misc.2d 158, 162 * * * (Sup. Ct. Kings County 1959). The issue here is simply whether Judge Owen was warranted in finding that Persky had violated this standard.

"Judge Owen found that '[w]ithout question, Persky was at the heart of this entire matter, guiding the entire plan, carrying threats to the dissidents and knowingly counseling, advising and instituting baseless and fraudulent lawsuits to achieve the [promoters'] goal.' Judge Owen's findings indicate that, *inter alia,* Persky was responsible for: (1) manipulating the settlement and assertion of the Buckley claim in bad faith; (2) threatening the defendants with the Buckley claim and other claims in bad faith; (3) naming Gross in the complaint as the customer's man with whom the Buckleys dealt in disregard of the truth, thereby needlessly vilifying Gross; (4) issuing a false opinion letter as 'special counsel' to the Partnership, thereby furthering the transfer in violation of the rights of Bleich and Donoghue; and (5) inducing and participating in the partners' breach of fiduciary obligation to Gross, Bleich and Donoghue. We find that the record supports the conclusion that Persky went 'beyond the scope of his honorable employment' and the district court's finding of liability."

In December, 1977, respondent moved for reinstatement, failing, however, to allege that he had been held liable in *Newburger (supra).* The Departmental Disciplinary Committee brought *Newburger* to this court's attention. In March, 1978, the court ordered respondent's motion to be held in abeyance and directed the Disciplinary Committee to complete its inquiry into *Newburger* within 60 days. In May, 1978, the Disciplinary Committee opposed respondent's reinstatement and, in August, 1978, this court denied respondent's motion.

Thereafter, the disciplinary proceeding involving *Newburger (supra)* was heard by a Disciplinary Committee hearing panel which, relying upon the *Newburger* opinions, found:

"17. The transfer to the Corporation of the capital contributions of Gross, Bleich and Donoghue without their con-

sent was a wrongful conversion of their assets and constituted a breach of the fiduciary duties owed to Gross, Bleich and Donoghue as partners. Respondent knowingly and intentionally took part in this conversion and breach of trust (see District Court Opinion, pages 19-20, 24 & 25).

"18. There was a deliberate plan by Respondent and others to injure Gross, Bleich and Donoghue as part of their steps to take over the new operation on a shoestring and directly enrich themselves; Respondent by getting a new client for himself and his firm. Without question, Respondent was at the heart of this entire matter, guiding the entire plan, carrying threats to the dissidents and knowingly counseling, advising and instituting baseless and fraudulent lawsuits to achieve the new team's goal, or for specific remuneration, and to obtain a lucrative client for his firm (See District Court Opinion, pages 18 & 25)."

The hearing panel made the following conclusions of law:

"Respondent's actions, as set forth in the above Findings, constituted a violation of Disciplinary Rule 1-102 (A) (4) of the Lawyer's Code of Professional Responsibility (the 'Code'), in that it constituted conduct involving dishonesty, fraud, or deceit, and constituted a violation of Disciplinary Rule 7-102 (A) (1) and (7) of the Code in that he took action on behalf of a client knowing that it would serve merely to harass or maliciously injure another and in that he counseled and assisted a client in conduct that he knew to be illegal or fraudulent. Accordingly, the Hearing Panel sustains charges that Respondent has been guilty of professional misconduct and deceit in violation of Section 90.2 of the Judiciary Law of New York in that he engaged in conduct in violation of Disciplinary Rules 1-102 (A) (4) and 7-102 (A) (1) and (7).

"The Hearing Panel dismisses the remaining charges, based upon alleged violations of Disciplinary Rules 1-102 (A) (6), 5-101 (A) and (B), and 7-102 (A) (2) and (5) of the Code."

Up until this point in the report, I agree with the panel's findings of fact and conclusions of law. However, I disagree with the panel on two items covered in the remainder of the report. Despite the panel's prior statement that respon-

dent "counseled and assisted a client in conduct that he knew to be illegal or fraudulent", it reached a somewhat startling conclusion as to respondent's opinion letter: "There is no doubt that Respondent knowingly and intentionally participated in the transaction and indeed, played an active and central role in its consummation. Nevertheless, we do not believe that the Respondent knew that the transfer was wrongful when he counseled its accomplishment and opined as to its legality. The question, as a matter of law, of the legality of the transfer absent the consents of Bleich and Donoghue, was not completely free from doubt. At least prior to the District Court opinion, arguments could be marshalled, although not ultimately persuasive, for the position that the transfer was permissible without their consents."

There are many passages in the Circuit Court's opinion that command a different conclusion; I point to but one (*Newburger, Loeb & Co. v Gross,* 563 F2d 1057, 1077, *supra*): "There was evidence that other threats were made as the closing date drew nearer but we think that the evidence we have summarized is sufficient to support Judge Owen's conclusion that Persky, Kayne, Risher, Muh and Sloane believed that the consent of Donoghue and Bleich was necessary to transfer and conspired to coerce the necessary acquiescence. When this plan failed they proceeded with the transfer, as promoters, officers, and counsel to the Corporation, in knowing violation of the rights of Donoghue and Bleich."

I am in further disagreement with that panel's discipline of respondent. While the panel found that respondent's actions constituted "*serious* professional misconduct", it merely reprimanded him. The panel had "no doubt that respondent's judgment was clouded by the pressures he found surrounding him and that it would have been wiser for him not to press so vigorously for the reorganization". The panel also noted that respondent had "in effect" been suspended for an additional one-year period during the time required to complete that disciplinary proceeding.

Historically, a reprimand has been imposed for minor departures from the Code of Professional Responsibility. Serious violations, such as those recounted in *Newburger*

(*supra*) and the hearing panel's report, should not have been treated as inconsequential deviations from the norm. Moreover, the proof in the record suggests that respondent's judgment in counseling the reorganization was clear and calculating rather than "clouded."

In January, 1979, Judge EDELSTEIN granted the SEC's motion for summary judgment permanently enjoining respondent from future violation of the securities laws. Judge EDELSTEIN's observations are very relevant to the present issue of respondent's reinstatement (*SEC v Everest Mgt. Corp.,* US Dist Ct, SDNY, 71 Civ 4932, Jan. 30, 1979, EDELSTEIN, J., pp 16-17):

"Applying these factors to the record in this case, the court is convinced that injunctive relief is necessary. First, Persky's past violations were not isolated transgressions of the securities laws. The record of Persky's two criminal convictions, as well as the opinions of the reviewing courts affirming those convictions, make clear beyond any reasonable doubt that Persky engaged in a series of patently fraudulent transactions designed to cover up Microthermal's misappropriation of approximately $500,000 of shareholders' funds. Second, in light of Persky's prior criminal convictions, this court has no difficulty concluding that Persky knowingly violated the securities laws; the purposeful and knowing nature of Persky's past violations does not augur well for the future. Third, as an attorney, Persky will face in the future many situations presenting opportunities for fraudulent conduct in violation of the securities laws. 'One who has displayed such frailty in the past and faces so many temptations in the future may well need the admonition of an injunction to obey the law.' *SEC v. Shapiro,* 494 F. 2d 1301, 1308 (2d Cir. 1974).

"In assessing the need for injunctive relief, the court has considered the substantial amount of time which has passed from the filing of the complaint in 1971. As a preliminary point, this court is not deprived of its power to grant injunctive relief simply because the complained of activities have been discontinued. (*United States v. W.T. Grant Co.,* 345 U. S. 629, 633 (1953); *SEC v. Management Dynamics, Inc.* 515 F. 2d 801, 807 (2d Cir. 1975). Moreover, the passage of time from the filing of the complaint in this

action until the present has not been uneventful. Aside from the two criminal convictions discussed above, Persky has been subject to strong judicial criticism and been found liable for his conduct in connection with the brokerage firm of Newburger, Loeb & Co., See *Newburger, Loeb & Co. v. Gross,* [1976-77 Transfer Binder] Sec. L. Rep. (CCH) ¶ 95, 649, *supra, aff'd in part and rev'd in part* 563 F. 2d 1057 (2d Cir. 1977). Contrary to Persky's claims, no issues remain on remand in Newburger concerning the illegal and unethical nature of Persky's conduct; that case is relevant here insofar as it reflects Persky's pronounced tendency to operate outside the recognized bounds of his profession and the law."

Damages against respondent Persky and his associates in *Newburger* (see 611 F2d 423) totaled several hundred thousand dollars. In an affidavit requested by this court, respondent has stated that he reached a settlement with Finley, Kumble to cover his share of the outstanding judgment in *Newburger.*

In January, 1979, respondent moved for reinstatement. A different panel of the Departmental Disciplinary Committee opposed the motion. In March, 1979, the motion was granted only to the extent of referring the matter to the Committee on Character and Fitness to hear and report as to respondent's character and fitness to practice law. In July, 1979, a six-member panel of the Character Committee recommended that respondent be reinstated.

Of that panel's 50-page report, 48 (i) trace the history of the *Microthermal* and *Newburger* suits, (ii) summarize 16 affidavits submitted on respondent's behalf, (iii) set forth respondent's explanation of the incidents, (iv) synopsize his activities during his suspension, and (v) otherwise give relevant background information. The report spends but one sentence in commenting upon respondent's role in *Newburger.* At page 49 of the panel's report, it is stated: "As to the Newburger Loeb matter, the Grievance Committee had thoroughly examined into Persky's participation in it, and had Reprimanded him."

I am both disappointed and dismayed by the fact that the Character Committee's panel so willingly accepted the "reprimand" imposed by the Disciplinary Committee's

panel. The Character Committee has both the power and duty to explore the facts underlying any disciplinary matter. In its report, I would have expected some independent discussion and analysis from the Character Committee's panel as to the weight to be accorded to *Newburger* (*supra*). Instead, that panel glossed over respondent's role in *Newburger* as if he had merely committed some breach of a ceremonial duty.

In November, 1979, this court issued the following order upon respondent's motion for reinstatement: "It is unanimously ordered that this matter be and the same hereby is remitted to the Chief Counsel for the Departmental Disciplinary Committee for the purpose of reviewing, *de novo,* the entire record concerning respondent and drawing charges for further suspension or disbarment which charges, together with the entire record and all documents, transcripts and papers relating thereto, shall be remitted by this Court to the Referee for consideration and recommendation as to disciplinary action. Pending receipt of the Referee's report and recommendation, determination of respondent's motion for reinstatement is held in abeyance." The order was obviously prompted by this court's dissatisfaction with the panel reports of the Disciplinary Committee and the Character and Fitness Committee. During the following six months, no action was taken by the Chief Counsel to the Disciplinary Committee. Respondent moved in May, 1980 for an order recalling the remittitur and reinstating him. Upon that motion, the former chief counsel stated that he could find no basis for filing any additional charges against the respondent. However, the chief counsel did suggest that the record of the proceedings before the committee be filed with this court for review or that the record be forwarded to a referee for review. In an order entered in July, 1980, this court resolved respondent's motion as follows: "It is ordered that said motion, insofar as it seeks reinstatement be and the same hereby is denied, and insofar as it seeks recall of the remittal order of this Court entered on March 20, 1979 (M-67) said motion is granted."

Thus respondent's motion for reinstatement was again denied because the court was obviously dissatisfied with

the mere "reprimand" imposed upon him in the *Newburger* matter. Undaunted, respondent moved for reinstatement in January, 1982. This court, without comment, denied his motion for the same apparent reason in March, 1982.

The motion at bar was returnable in January, 1983. In a letter from the chief clerk of the court, respondent was asked to answer a series of questions in order to update certain background information. To the extent here relevant, it should be emphasized that respondent is still a party in six actions arising out of his role in *Newburger* (see, e.g., *Gross v Newburger, Loeb & Co.,* 85 AD2d 709).

The principles that guide the court upon this motion for reinstatement are worth repeating. The burden is on the movant to prove that he possesses the requisite character and fitness to practice law. (*Matter of Riley,* 277 App Div 993). The ultimate purpose of a disciplinary proceeding is the protection of the public in its reliance upon the integrity and responsibility of the Bar. Discipline is not primarily a punishment. Essentially it is an effort to see to it that the public will not be exposed to similar infractions. (*Matter of Nearing,* 16 AD2d 516, 518). The dispositions of prior complaints of similar professional misconduct are always relevant to the measure of discipline warranted in the case at hand (*Matter of Wildove,* 40 AD2d 1042, 1043). Recurring evidence of lack of professional responsibility proves that an attorney is unfit to remain at the Bar (*Matter of Anderson,* 23 AD2d 326, 327).

Respondent Persky has not proved by clear and convincing evidence that he should be reinstated. To paraphrase Judge Edelstein's conclusion in *Everest,* Persky's activities in *Microthermal* and *Newburger* (*supra*) are proof of a marked inclination in Persky to engage in serious professional misconduct. Every month, attorneys are disbarred in this court for causing damages that are but a small fraction of the damages caused by Persky in *Microthermal* and *Newburger.* Further, Persky was less than candid in his dealings with this court and the Departmental Disciplinary Committee. His silence in 1975 concerning the existence of *Newburger* was calculated, for though the case was then *sub judice* he knew that it would open a door upon a broader view of his character, one already shown by his

convictions to be fraudulent. Thus, after *Newburger* was decided against him during his suspension, he mentioned it not at all upon his motion for reinstatement in 1977. Deceptiveness of this kind does not make one confident in respondent's character, and it can hardly be said to be evidence of reformation.

Contrary to the conclusion of the majority, the fact that the whole of Persky's misconduct is now known to the court, or that Persky has supplied information requested of him by the court and its committees, or that he has been subjected to discipline and suffered penalties, whether considered singly or together, are not clear and convincing proof that Persky's character is of the kind that we would call to the Bar. As for the committee's reprimand of Persky for his conduct in *Newburger,* the reprimand did not fix for this court the boundaries of discipline imposable for that conduct. The committee, as the investigative and prosecutorial instrumentality of this court in disciplinary matters, does not have that power, nor does due process force that result. Hence, it is error for the majority to hold that because the *Newburger* reprimand was left unchallenged by Persky and the committee, the conduct of Persky underlying that reprimand is cordoned off, isolated from our review. The discipline of attorneys is a power vested in and reserved to this court alone, surely beyond diminution by the inaction of its prosecutorial nominee and a respondent who must have gratefully looked upon his reprimand as a gift. The majority must agree that, if this court learns of an attorney who has been reprimanded by the Departmental Disciplinary Committee for disbarrable conduct, the court, possessing the reserved power to discipline, is empowered to direct the commencement of a disciplinary proceeding for that misconduct and to disbar that attorney. The respondent in that proceeding could not allege the committee's reprimand in defense against censure, suspension or disbarment by this court. Accordingly, if a reprimand may not be raised against a proceeding to impose discipline, it may not be raised to determine the measure of discipline in a proceeding for reinstatement.

Respondent has been suspended over seven years. In retrospect, this court should have directed the commence-

ment of a disciplinary proceeding against him once it discovered his involvement in *Newburger*. The court's failure to do so is partially attributable to its expectations that a more severe sanction would be forthcoming from the Disciplinary Committee and that a less favorable report would issue from the Character and Fitness Committee in the *Newburger* matter. Further, the court's failure to take sterner measures is traceable to the unwieldy nature of the present disciplinary process. As the extraordinary events developed in this proceeding, it became clear that under the present rules, the powers and duties of the court, the Character and Fitness Committee, and the Disciplinary Committee and its chief counsel, were ill defined vis-à-vis each other. It is unfortunate that these problems, created by and entrenched in the present disciplinary system, have benefited respondent Persky. After these many years, his persistence and deceit have found a reward in reinstatement even as many sue him to recover losses caused by his misconduct. It is indeed ironic that in 1983 this court reinstates Persky whom Judge EDELSTEIN in 1979 found to have a "pronounced tendency to operate outside the recognized bounds of his profession and the law." (*SEC v Everest Mgt. Corp.*, US Dist Ct, SDNY, 71 Civ 4932, Jan. 30, 1979, EDELSTEIN, J., *supra*). He whom we would not admit to the Bar, we reinstate.

SULLIVAN, ROSS and BLOOM, JJ., concur; MURPHY, P. J., and CARRO, J., dissent in an opinion by MURPHY, P. J.

Motion granted and respondent reinstated as an attorney and counselor at law in the State of New York.