OPINION OF THE COURT
Michael J. Dontzin, J.
This proceeding involves motions and cross motions (albeit improperly designated as such), of various third-party defendants for an order pursuant to CPLR 3211 (a) (7) dismissing the third-party complaints of Sea-Land Service, Inc. (Sea-Land) and Puerto Rico Marine Management, Inc. (PRMMI) on the grounds that: (1) the complaints fail to state a cause of action; and (2) that the actions are barred by General Obligations Law § 15-108.
The underlying action, brought under the Jones Act (46 USC § 688) and general maritime law, was for personal injuries of David D. Swogger (Swogger) and his wrongful death due to malignant mesothelioma, allegedly caused by exposure to asbestos. The named defendants in the main action were shipowners of some 13 vessels upon which Swogger sailed as a marine engineer during his more than 35 years at sea.
The third-party action of Sea-Land seeks indemnity and/or contribution from various manufacturers and distributors of asbestos insulation products installed on ships on which Swog *413 ger sailed;[1] shipyards which installed these products,[2] and other shipowners[3] of ships upon which Swogger sailed. PRMMI’s third-party action is against Todd Shipyards Corp. (Todd).
Swogger’s action was settled as against all shipowners, and the third-party actions were severed.
Sea-Land’s third-party complaint against the manufacturers and suppliers of asbestos products — alleges they failed to warn of the dangers and hazards of asbestos; negligently designed, tested, manufactured and distributed a dangerous product for marine use and breached various warranties with respect to fitness of asbestos for use aboard vessels; as against the shipyard defendants — alleges they negligently repaired and converted the vessel by installing asbestos products, and breached their warranty of safety and workmanlike services thereby creating the dangerous condition; as against the other shipowners — alleges they were negligent in failing to provide Swogger with a safe place to work and in failing to warn Swogger of the defective condition.
In short, Sea-Land claims that the acts of all third-party defendants created the unsafe condition aboard the vessels on which Swogger sailed; thereby causing his injuries and death.
PRMMI’s third-party complaint against Todd substantially makes the same claims as does Sea-Land against the shipyards there involved.
The issues presented here are — whether this case is governed by Federal admiralty law; and whether, notwithstanding the General Obligations Law (if Federal admiralty law does not apply), are Sea-Land and PRMMI entitled to indemnification?
*414 If there is admiralty jurisdiction, then substantive admiralty law applies since State courts must apply Federal law "to secure a single and uniform body of maritime law” (Matter of Rederi [Dow Chem. Co.], 25 NY2d 576, 581, cert denied 398 US 939 [1970]; Executive Jet Aviation v City of Cleveland, 409 US 249, 255 [1972]; Lerner v Karageorgis Lines, 66 NY2d 479, 485 [1985]; Larios v Victory Carriers, 316 F2d 63, 65 [2d Cir 1963]). Under Federal admiralty law, Sea-Land and PRMMI would not be barred from contribution or indemnification (e.g., The Ira M. Hedges, 218 US 264, 270 [1910]; Garrett v Moore-McCormack Co., 317 US 239, 245 [1942]; Sealand Serv. v American Logging Tool Corp., 1986 AMC 1047 [DDC]). If there is no admiralty jurisdiction here, Sea-Land and PRMMI concede that they have no right of contribution under the General Obligations Law, but are entitled to indemnification.
In order to come within the ambit of admiralty jurisdiction a tort claim must first satisfy the traditional "locality” requirement that the wrong occurred on the high seas or navigable waters within the United States (The Plymouth, 3 Wall [US] 20, 35-36 [1865]; East Riv. S. S. Corp. v Transamerica Delaval, 476 US 858, —, 90 L Ed 2d 865, 872 [1986]). Once having met the locality requirement there is the additional requirement of "maritime nexus” — the wrong must bear "a significant relationship to traditional maritime activity” (Executive Jet Aviation v City of Cleveland, supra, at 268; Foremost Ins. Co. v Richardson, 457 US 668 [1982]; East Riv. S. S. Corp. v Transamerica Delaval, supra).
It should be noted that the court in East Riv. (supra) found it unnecessary to reach the question of whether the requirement of a maritime nexus must be established where a tort occurs on the high seas. However, the court observed that if there "[w]ere such a requirement, it clearly was met here, for these ships were engaged in maritime commerce, a primary concern of admiralty law” (supra, 476 US, at —, 90 L Ed 2d, at 872-873). The relevancy of East Riv. (supra) here is that the Supreme Court’s observation that a manufacturer of an appurtenance on a ship may be held in strict products liability in admiralty, for an injury caused by a defective product while the ship was in navigation (supra, 476 US, at —, 90 L Ed 2d, at 873). The argument that since the injuries to Swogger, a seaman, allegedly were caused by the wrongful acts of the third-party defendants on the high seas and, therefore, the maritime nexus need not be established — is too simplistic to be dispositive of that issue here. The underlying legal concept to support that argument still awaits a definitive determination by the Supreme Court.
*415 A review of the cases demonstrates that the determination of whether there is admiralty jurisdiction becomes a matter of focus (compare, Keene Corp. v United States, 700 F2d 836 [2d Cir 1983], cert denied 464 US 864 [1983], and Lingo v Great Lakes Dredge & Dock Co., 638 F Supp 30 [ED NY 1986], with Austin v Unarco Indus., 705 F2d 1 [1st Cir 1983], cert dismissed 463 US 1247 [1983], and Sperry Rand Corp. v Radio Corp. of Am., 618 F2d 319 [5th Cir 1980]). In Keene and Lingo the court’s focus was on the activities of the defendants instead of the injured individual’s activities, as was the case in Austin and Sperry Rand. Keene involved a suit for indemnity and contribution brought by an asbestos manufacturer, against the United States for designing and specifying asbestos insulation products and for failing to inspect the work place — which resulted in injuries to certain shipyard workers and those who had been exposed to asbestos aboard vessels at sea. The rationale of the court in Keene in finding that there was no "maritime nexus” was that there was no independent connection between the asbestos products and traditional maritime activity. Specifically, the court found that this asbestos insulation was not designed for maritime use and that the government activities in the role, design, and "specification of asbestos as a component of insulation [etc., did] not bear a significant relationship to traditional maritime activities” (supra, at 844).
Similarly in Lingo (supra) the court, relying on Keene (supra), found that there was no admiralty jurisdiction on the ground, among others, that the complaint did not "allege that any of the [asbestos] manufacturers supplied products of a distinctly maritime nature” (638 F Supp, supra, at 33).
In Austin (supra) the court refused to accept the requirement of an independent connection between the manufacturers of a product and traditional maritime activity as a criteria of maritime nexus, but instead would extend it to the manufacturer of the product regardless of whether the manufacturer intended or knew that its products be used aboard ships (705 F2d, supra, at 9). In doing so the Austin court, in part, relied upon Sperry Rand (supra) where the same rationale, of focusing on the injured party and surrounding circumstances, was employed in finding admiralty jurisdiction over a manufacturer of a component part of a marine gyropilot steering mechanism, even though that component was not specifically manufactured for marine use (618 F2d, supra, at 322), and upon situations where a cross claim in admiralty was allowed *416 against the manufacturer of a component part of a ship’s engine, despite the fact that there was no demonstration that the parts were designed for maritime use (In re Queeny/Corinthos, 503 F Supp 361, 363 [ED Pa 1980]).
It seems clear that the court’s analysis in Austin (supra) and Sperry Rand (supra) was based on public policy considerations and the furthering of "important national interest in [establishing] uniformity of law and remedies for those facing the hazards of waterborne transportation” (Kelly v Smith, 485 F2d 520, 526 [5th Cir 1973]),[4] and to prevent the undercutting of those interests, by refusing to distinguish between manufacturers according to whether they designed or intended their products for maritime use. (Austin v Unarco Indus., 705 F2d, supra, at 10.)
Turning to the case at hand, two points for consideration need little or no discussion. First, the "locality” requirement of admiralty jurisdiction is clearly met. The injuries complained of in the Swogger action, and the activities leading to those injuries, occurred at sea. Second, the products liability aspect of this case — whether founded on negligence or strict liability — is now clearly recognized as part of general maritime law (East Riv. S. S. Corp. v Transamerica Delaval, supra, 476 US, at —, 90 L Ed 2d, at 873). What is debatable, is whether under the facts here, the "maritime nexus” requirement has been met. While third-party defendants urge that this court follow the rationale of Keene (700 F2d 836, supra) and Lingo (638 F Supp 30, supra), it seems that notwithstanding that those cases were decided in our local Federal circuit, the rational in Austin (supra) and Sperry Rand (618 F2d 319, supra) is more compelling. The results achieved there are more consistent with the over-all purposes and designs of admiralty, to protect those men and women who go to sea from the hazards of that endeavor, over which they have little or no control (State of Maryland, 85 F2d 944, 945 [4th Cir 1936]; Seas Shipping Co. v Sieracki, 328 US 85, 93 [1946]; Waldron v Moore-McCormack Lines, 386 US 724, 728 [1967]). Moreover, as previously stated, the results preserve the integrity of a uniform national law governing maritime cases.
*417 Following the analysis which rejects the requirement of an independent connection between the offending product and traditional maritime activity, which to this court seems to be at best a mechanical test, but focusing instead on the activities of the injured party, in the context of the circumstances and locale of the injury — it is clear that there is a maritime nexus here. It should be noted that while the court in Austin (705 F2d 1, supra) did not find that the plaintiff there was engaged in traditional seaman’s activities so as to create a maritime nexus, it was conceded that if the asbestos products there caused injury to a ship crewmember or passenger, admiralty jurisdiction would be established (supra, at 10).
Since asbestos was the offending product here, maritime jurisdiction should be extended to the manufacturers and installers of that product, as it was to manufacturers of other instrumentalities that caused unsafe and hazardous conditions aboard ship — even though the products originally may not have been specifically intended for maritime use (see, Sperry Rand Corp. v Radio Corp. of Am,., 618 F2d 319, supra; Jones v Bender Welding & Mach. Works, 581 F2d 1331 [9th Cir 1978]). In so holding, it assures that all of the demands made and arising out of the circumstances leading to injuries in the underlying action will be adjudicated in the same jurisdictional context. This is not only a desirable result but one that conforms with substantial justice; considering that Sea-Land and PRMMI are held strictly liable for Swogger’s injuries, where the claim is for unseaworthiness, despite that the conditions causing the injuries were created by others — allegedly the third-party defendants.
Other than a point of "focus” approach in assessing the relationship between the wrong and traditional maritime nexus, there is the four-factor analytical approach first enumerated. in Kelly (485 F2d, supra, at 525). These are: "the functions and roles of the parties”, "the types of vehicles and instrumentalities involved”, "the causation and the type of injury”, and "traditional concepts of the role of admiralty law”.
Applying these factors to the situation here, while the first two factors may arguably favor admiralty jurisdiction — or weigh against it — the third and fourth factors weigh heavily in establishing a maritime nexus. During the some 30 years that Swogger served aboard ships as a marine engineer, he apparently was uniquely exposed to asbestos fiber whose *418 release from the insulation in the engine room was commonplace. Indeed, the basis of his claim was that this very exposure to the asbestos in the engine room was the cause of his injuries and wrongful death.
As to the fourth factor — admiralty law has played a traditional and fundamental concerned role in protecting those exposed to the hazards of maritime service by furnishing remedies for those injured while at sea. (State of Maryland, 85 F2d 944, supra; Seas Shipping Co. v Sieracki, 328 US 85, supra; Waldron v Moore-McCormack Lines, 386 US 724, supra.)
It therefore follows, considering both of these factors, that if Swogger could have had a maritime remedy against the various manufacturers and distributors of asbestos insulation products, the shipyards which installed these products, as well as the other shipowners of ships upon which he sailed (the third-party defendants here), then the third-party complaints of Sea-Land and PRMMI are similarly within admiralty jurisdiction, even though they may be considered to be separate and distinct claims.
In view of the holding that Federal admiralty law governs here, it is unnecessary to formally consider whether Sea-Land and PRMMI would be entitled to indemnification under State law. However, this court is constrained to observe that under the circumstances here indemnification is not barred by section 15-108 of the General Obligations Law.
The right to indemnify, as distinguished from contribution, "springs from a contract, express or implied, and full, not partial, reimbursement is sought” (see, McFall v Compagnie Mar. Belge, 304 NY 314, 327-328 [1952]). Indemnification is designed to prevent unjust enrichment, and equity, the root source of indemnification, has developed a rule of fairness that provides "[w]here payment by one person is compelled, which another should have made * * * a contract to reimburse or indemnify is implied by law”. (Brown v Rosenbaum, 287 NY 510, 518-519 [1942]; see also, McDermott v City of New York, 50 NY2d 211, 217 [1980].)
Given this conceptual background, one can readily understand the controlling rule of law in this State — that the limiting aspects of the General Obligations Law are applicable only to contribution rights and claims, and not to indemnification (Riviello v Waldron, 47 NY2d 297, 306 [1979]; McDermott v City of New York, supra, at 219-220).
*419 This court takes cognizance of the great number of third-party defendants against whom claims are made by Sea-Land. Whether these claims can be sustained when put to the test of proof is indeed an open question. However, for purposes of this proceeding, the allegations in the complaint must be deemed to be true. Moreover, the pleading is entitled to every favorable reference that may be drawn from it (see, Westhill Exports v Pope, 12 NY2d 491 [1963]). All that is required is that the complaint manifest a cause of action cognizable under law (see, Siegel, NY Prac § 265, at 325), and for the reasons heretofore discussed, this court finds that it does.
Accordingly, the motions and those proceedings misdesignated as cross motions are denied in all respects.

. The asbestos manufacturers/distributors that have submitted moving papers are Combustion Engineering, Inc., Raymark Industries, J. P. Stevens, A. W. Chesterton, Nicolet and John-Crane Houdaille. The members of the Asbestos Claims Facility, including 17 of the named third-party defendants (Fibreboard Corporation, Fibreboard Paper Products Corporation, Owens-Corning Fiberglass Corp., The Celotex Corporation, Philip Carey Manufacturing Co., Keene Corporation, Keene Building Products Corporation, Baldwin-Ehret Hill, Inc., H. K. Porter Co., Inc., Southern Textile Corporation, Pittsburgh Corning Corp., Rock Wool Manufacturing Company, Eagle-Picher Industries, Inc., Armstrong World Industries, Inc., National Gypsum Company, The Flintkote Company, and Thorpe Insulations, Inc.), GAF Corporation, Standard Asbestos Manufacturing & Insulation Company and U. S. Mineral Products.

. The third-party defendant shipyards that have submitted moving papers are Todd Shipyards, Kaiser Co., Inc. and Kaiser Steel Corp.

. The third-party defendant shipowners that have submitted moving papers are American Sugar Refining Co. and Amstar.

. A very amusing case arising from what the Circuit Court aptly characterized as a miniship-to-shore battle on the Mississippi River, between fleeing deer poachers (the Kellys) on a 15-foot outboard motorboat, and the rifle-firing caretakers of a private hunting island preserve ashore. The land detachment won the battle but lost the lawsuit, the court holding that the tort claims of the Kellys, casualties aboard the boat, were within admiralty jurisdiction.